190 N.J. Super. 269 (1983)
463 A.2d 359
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD BLANKS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 2, 1983.
Decided May 19, 1983.
*271 Before Judges ARD, KING and McELROY.
Joseph H. Rodriguez, Public Defender of New Jersey, attorney for appellant (Mark P. Stalford, Designated Counsel, of counsel and on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent (David V. Brody, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by KING, J.A.D.
The issue here is whether the doctrine of manifest necessity permits a second criminal trial despite a plea of double jeopardy where the trial judge sua sponte declared a mistrial during the first trial to protect the ends of public justice.
Defendant was indicted for armed robbery, N.J.S.A. 2C:15-1, and possession of a handgun without a permit, N.J.S.A. 2C:39-5(b). In February 1982 defendant went to trial before Judge Long and a jury. Sua sponte, and over defendant's objection, the judge declared a mistrial during the presentation of the defendant's case. After denial of his motion to dismiss on double jeopardy grounds, defendant was retried, convicted on both counts, and sentenced to state prison for 15 years with a five-year mandatory minimum term.
The criminal charges evolved from a gunpoint robbery by two men of the bartender at Ryan's Lounge in Elizabeth on July 19, 1981 at about 2 a.m. Defendant and Steven Robinson were apprehended promptly in the vicinity shortly after the robbery and both were identified as the culprits by the bartender, Loftus. Robinson was tried first, by a jury, and found not guilty of the armed robbery charge. His defense was that he was caught that night while fleeing from a street-corner gambling scene and he had nothing to do with the robbery at Ryan's Lounge. Robinson's jury acquitted on the ground of misidentification.
*272 At defendant's first trial, Robinson, now acquitted of these charges, testified that the first time he saw defendant on the night of the robbery was after he had fled from the corner of Jefferson and Dickson Streets, the gambling scene. Robinson denied being at Ryan's Lounge at any time that night. On Robinson's redirect by defense counsel Harris this exchange occurred:
Q: Mr. Robinson, how many times have you testified in Court?
A: I guess maybe three times. I don't  counting my trial? One, two, three, four times.
Q: And you were tried for this matter?
A: I was found  yes, I was found not guilty.
MS. DUPUIS [Prosecutor]: Objection, Your Honor. We've clearly discussed that in depth prior to 
THE COURT: Okay. Ladies and gentlemen, would you recess into the jury room.
After the jury was excused, the State took the position that the judge should grant a mistrial sua sponte. The prosecutor emphasized that she had personally warned Robinson, with defense counsel's knowledge, not to volunteer his prior acquittal in the jury's presence. Defense counsel opposed a mistrial and urged that a curative instruction was adequate.
Judge Long granted the motion, saying:
I've thought about this matter over the lunch hour, and when I indicated that Mr. Robinson said "I was found not guilty in another trial" not in response to a question, what I meant to say for the record is that I did not believe in any sense that Mr. Harris was eliciting or attempting to get that kind of a response from the witness.
On the other hand, I believe that that was not the first time that Mr. Robinson tried to get that piece of information before the jury.
I felt during his testimony that it was only the fact that he was being cut off by the next question that that was not said before the jury prior to the time it actually was blurted out.
And the question that I have before me in terms of a mistrial, and that's a pretty extraordinary, pretty extreme remedy, there's no question about that, is whether or not there is any other alternative that is available to me. Any other means, if you will, alternative which would secure the fact that justice is going to be done.
This is not a case in which co-defendant or two persons charged with a crime have participated in it or alleged to have participated in it, in different ways.

*273 For example, this is not a case in which one individual goes into a store and actually holds a gun during the course of a robbery, and the other one is alleged to be sitting in the car outside.
This is a case in which essentially Mr. Robinson and Mr. Blanks are in bed together. They're going to stand or fall together.
Mr. Blanks has one defense, and that is Mr. Robinson, essentially. And to suggest to the jury that the fact that Mr. Robinson has been found not guilty of this offense, in which an eyewitness said that they were together, he saw them together, the robbery was committed by them together, to suggest that he's been found not guilty, and they should strike that from their minds, I believe is an illusion.
I understand, as Mr. Harris indicated, that very often these kinds of cases go to the Appellate Division. And where there's been a denial of a mistrial, the trial court is upheld.
I also have done what both parties I'm sure did in their minds as well. I've put the shoe on the other foot.
And if the situation were reversed, there's no question in my mind that I would grant a mistrial. That is, if this was one of the State's witnesses who blurted out that he'd been found guilty at another trial. There would be no question I would grant a mistrial to the defendant.
I believe that the potential here for injustice, for gross miscarriage of justice to take place is  outweighs any possibility of my giving a curative instruction.
And I am, regretfully, going to grant a mistrial.
Defendant's post-trial motion to dismiss the indictment on jeopardy grounds was also heard and denied by Judge Long. Her comments on the events inducing the mistrial include the following pertinent conclusions:
Factually what occurred here is that on redirect testimony the co-defendant in this case, who was tried at a prior time and found not guilty, that is, Steven Robinson, I ordered sua sponte a mistrial. This ruling was based upon Robinson's remark to the jury that he had been found not guilty at the prior trial.
It was my view at that time that the State and the public would be denied a fair trial as a result of this testimony, and that no curative instruction would suffice. And I really struggled to attempt to develop a curative instruction, which is always a preferable road to take over a mistrial, but in my estimation there simply, when you got two defendants essentially in bed together, that's what you have here. This is not a case where you have one defendant driving an automobile while another one goes into some kind of a location and does a robbery.
This is two people who were either  they either were together or they weren't. They were either people who did it or weren't. They were both identified as the people who did this robbery, by the eyewitness. They have to stand or fall together.

*274 For Mr. Robinson, in my estimation, to have said to this jury I was found not guilty, colored forever the possibility that this would ever be decided on facts. And that was the reasoning that underpinned my granting of a mistrial, regretfully, in place of giving a curative charge.
* * * * * * * *
It is clear to me, as I indicated previously, that there was no way to repair the damage which was done by what was said by Mr. Robinson.
* * * * * * * *
It seems clear to me on the basis of everything that transpired in this case, Mr. Robinson was aware from the very beginning as to what he should and should not be saying before this jury.
It's equally my opinion, I think I said it previously in another proceeding, that what Mr. Robinson finally blurted out in this case was something that he was attempting, he was straining to get into this record all along during the course of his testimony.
I felt that only the efforts of Mr. Harris and Mrs. Dupuis in fact precluded Mr. Robinson from saying the bad words prior to the time that he actually said them.
It is clear equally to me that it would be a manifest injustice, and it would be detrimental to society's right and to the public's right to a fair trial, to have allowed this trial to proceed to its conclusion.
Our Supreme Court recently stated that the Double Jeopardy Clauses in our state[1] and federal[2] constitutions have been "construed to be coextensive." State v. Dively, 92 N.J. 573, 578 (1983). See State v. Barnes, 84 N.J. 362, 370 (1980) (noting that the language of the federal clause is broader in scope than our state clause but that their application is coextensive).[3]
*275 The "authoritative starting point of our law in this field [of double jeopardy]"[4] is United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), in which the Supreme Court rejected defendant's assertion that he could not be retried after the judge discharged a jury which could not reach a verdict, saying:
We are of the opinion that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defense. We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the changes of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office. [Id. at 580, 6 L.Ed. 165.]
In Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901, reh. den. 368 U.S. 870, 82 S.Ct. 25, 7 L.Ed.2d 70 (1961), cert. den. 376 U.S. 918, 84 S.Ct. 674, 11 L.Ed.2d 614 (1964), the trial judge on his own motion declared a mistrial during the direct examination of the government's fourth witness. Defense counsel neither approved nor objected to the judge's action. Id. at 365, 81 S.Ct. at 1524. Agreeing with the Court of Appeals, the Supreme Court, in an opinion by Justice Frankfurter, observed that the trial judge was acting according to his convictions in protecting the defendant's rights when he perceived that the prosecuting attorney's line of questioning was calculated to inform the jury of other crimes committed by the accused. Id. at 366, 81 S.Ct. at 1525. The Court stated some of the settled principles surrounding the application of the double jeopardy rule:

*276 Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment.... It is also clear that "This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be better served ...," and that we have consistently declined to scrutinize with shart surveillance the exercise of that discretion. [Id. at 368, 81 S.Ct. at 1526 (citations omitted).]
Focusing on the trial judge's purpose of protecting defendant's rights, the Court was unwilling to hold that where it clearly appears that the trial judge granted a mistrial in the sole interest of defendant the necessary consequence is to bar all retrial. Id. at 369, 81 S.Ct. at 1526-1527.
In United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), defendant was charged with 25 counts of willfully assisting in the preparation of fraudulent income tax returns. Five of the witnesses were taxpayers whom defendant aided in preparing fraudulent returns. When the first of these witnesses was called, the trial judge refused to allow him to testify until he consulted an attorney because the judge did not believe that the witness had been given an adequate Fifth Amendment warning at the time he was contacted by the Internal Revenue Service. After determining that the other four witnesses were similarly situated, the judge aborted the trial. Id. at 472-473, 91 S.Ct. at 550-551. Thus, Jorn is similar to the case before us to the extent that a mistrial was declared to protect an interest other than defendant's.
Stating that when the trial judge terminates the trial without defendant's consent, the defendant has been deprived of his valued right to have his trial completed by a particular jury, the Jorn court said:
If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributable to prosecutorial or judicial over reaching, a motion by the defendant for mistrial is ordinarily *277 assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. In the absence of such a motion, the Perez doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. [Citations omitted.]
* * * * * * * *
In sum, counsel for both sides perform in an imperfect world; in this area, bright-line rules based on either the source of the problem or the intended beneficiary of the ruling would only disserve the vital competing interests of the Government and the defendant. The trial judge must recognize that lack of preparedness by the Government to continue the trial directly implicates policies underpinning both the double jeopardy provision and the speedy trial guarantee. [Citations omitted.] Alternatively, the judge must bear in mind the potential risks of abuse by the defendant of society's unwillingness to unnecessarily subject him to repeated prosecutions. Yet, in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate. [Id. at 485-486, 91 S.Ct. at 557-558 (emphasis supplied).]
In Jorn, the Supreme Court concluded that the trial court aborted the proceedings too abruptly, did not consider the possibility of a continuance nor make any "effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the sua sponte declaration of this mistrial," id. at 487, 91 S.Ct. at 558, and held that defendant's reprosecution was barred by double jeopardy principles. Ibid. See also Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).
In State v. Rechtschaffer, 70 N.J. 395, 404-410 (1976), our Supreme Court reviewed the United States Supreme Court's opinions on this aspect of double jeopardy and said
The common threads that run through the Supreme Court cases are centered about the propriety of the trial court's granting sua sponte the mistrial and its cause. Did the trial court properly exercise its discretion so that a mistrial was justified? Did it have a viable alternative? If justified, what circumstances created the situation? Was it due to prosecutorial or defense misconduct? Will a second trial accord with the ends of public justice and with proper judicial administration? Will the defendant be prejudiced by a second trial, and if so, to what extent? [Id. at 410-411.]
*278 Unquestionably, trial judges have a permissible discretionary range within which they may properly grant a mistrial, sua sponte or otherwise. Rechtschaffer, supra, 70 N.J. at 406. See United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); Illinois v. Somerville, 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973). We hold that the declaration of the mistrial in this case was within that discretionary limit. True, the interest protected was that of the State, not of defendant. But no authority suggests that the Double Jeopardy Clause is totally a one-way street or a procedural straightjacket not responsive to the unprovoked and unexpected misfortune of the State or to abuses by defendants or their witnesses. Arizona v. Washington, 434 U.S. 497, 512-516, 98 S.Ct. 824, 833-835, 54 L.Ed.2d 717 (1978).
The State and defendant equally have an interest in exclusion of improper evidence. Here we have a witness who with deliberation was seeking the opportunity to intrude the determination of another jury into this case. The unexplained pattern of defense counsel's redirect examination was an invitation to do so.
We conclude that the judge scrupulously considered the only real alternative, a curative instruction, and found it wanting. See Bruton v. United States, 391 U.S. 123, 129, 88 S.Ct. 1620, 1624, 20 L.Ed.2d 476 (1968), where the Supreme Court observed that in certain circumstances a curative instruction in a criminal trial may be "a futile collocation of words" and its effectiveness a "naive assumption." We seriously doubt that any jury instruction could erase the offending remark by Robinson about his prior acquittal or enable the jury to deliberate on defendant's fate without considering that defendant's alleged cohort had been freed by an earlier jury which rejected virtually the same quality of identification testimony offered against him. Moreover, there is no showing that defendant was actually prejudiced by the second trial which started ten days after the mistrial. The same witnesses, including Robinson, were available and defendant's trial strategy was unimpaired by the mistrial. *279 Cf. Rechtschaffer, supra, 70 N.J. at 416 (jeopardy attached in part because "defendant suffered the loss of a substantial [tactical] trial advantage"). Nor was the mistrial provoked by any neglect, excusable or inexcusable, on the State's part. Cf. State v. O'Keefe, 135 N.J. Super. 430, 442 (Law Div. 1975) (two-week continuance because of State's poor preparation; Jeopardy Clause barred conviction); accord, Downum v. United States, supra, 372 U.S. at 737-738, 83 S.Ct. at 1035-1036. In this case, where the offending comments produced by defendant's previously-warned witness were probably a by-product of defense counsel's inartful, if not intentional, manner of redirect examination in the circumstances, we find no abuse of discretion in the grant of mistrial in the manifest interest of public justice.
Defendant contends that three errors in his second trial require reversal. He contends that the prosecutor's improper reference to his alleged alias in her opening statement prejudiced his right to a fair trial.
At defendant's first trial the judge apparently granted his motion to prohibit any mention of the alias; at the second trial no such motion was made. In her opening statement the prosecutor read the indictment including references in each count to defendant as "EDWARD BLANKS, also known as JOHNNIE WASHINGTON." At the conclusion of the prosecutor's opening statement, defendant moved for a mistrial which the court denied.
A prosecutor's opening statement "is not grounds for reversal unless allegations in the opening statement are completely unsupported by the evidence and there is a showing of prejudice to the defendant and bad faith by the prosecutor." State v. Hipplewith, 33 N.J. 300, 309 (1960). Not every deviation from perfection on the part of a prosecutor will justify reversal; before reversal ensues the prosecutor's infraction must be clear and unmistakable and must substantially prejudice the defendant's fundamental right to have the jury fairly evaluate the merits of his defense. Id. at 314.
*280 We find that reading defendant's alias in each count of the indictment does not constitute reversible error. The prosecutor's mention of the alias was inadvertent. Defense counsel conceded that the mention of defendant's alias was "solely through inadvertence on [the prosecutor's] part." We find that the mention of the alias could not have substantially prejudiced defendant's right to have the jury evaluate the merits of his defense. The remarks were made at the beginning of the three-day trial; they were not repeated in testimony or summation. They did not go to the merits of the defense, that defendant was inadvertently apprehended with codefendant while Robinson was fleeing from a gambling incident. See United States v. Wilkerson, 456 F.2d 57 (6th Cir.1972), cert. den. 408 U.S. 926, 92 S.Ct. 2507, 33 L.Ed.2d 337 (1972).
Finally, we conclude that defendant's contention that the prosecutor's summation improperly suggested an adverse inference from his failure to testify and that his sentence was manifestly excessive are clearly without merit. R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] Article I, par. 11 of the New Jersey Constitution reads: "No person shall, after acquittal, be tried for the same offense." N.J.Const. (1947), Art. I. par. 11.
[2] The Fifth Amendment to the United States Constitution says in part: "nor shall any person be subject, for the same offense, to be twice put in jeopardy of life and limb." U.S.Const., Amend. V.
[3] The Clause has been codified in the Code of Criminal Justice, which in pertinent part states that a prosecution is barred by former prosecution unless

The trial court finds that the termination is required by a sufficient legal reason and a manifest or absolute overriding necessity. [N.J.S.A. 2C:1-9(d)(3).]
[4] Gori v. United States, 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901, reh. den. 368 U.S. 870, 82 S.Ct. 25, 7 L.Ed.2d 70 (1961), cert. den. 376 U.S. 918, 84 S.Ct. 674, 11 L.Ed.2d 614 (1964).