## STATE IN THE INTEREST OF D.P., A JUVENILE.

Superior Court of New Jersey
Appellate Division

Submitted January 19, 1989—Decided March 20, 1989.

Before Judges KING and ASHBEY.

*Alfred A. Slocum*, Public Defender, attorney for appellant (*Barbara J. Lieberman*, Designated Counsel, of counsel and on the brief).

*John Kaye*, Monmouth County Prosecutor, attorney for respondent (*Mark P. Stalford*, Assistant Prosecutor, of counsel and on the letter brief).

The opinion of the court was delivered by

ASHBEY, J.A.D.

The primary question raised in this juvenile delinquency appeal is whether a declaration of a mistrial barred a second trial for juvenile delinquency because of double jeopardy. We conclude that it did not and accordingly affirm.

Juveniles, D.P. and S.H., were charged with various offenses stemming from an incident in which a group of juveniles significantly damaged a house and frightened its inhabitants by throwing rocks, bricks and wood, breaking windows and depositing debris inside. After a mistrial was declared, and follow-

ing a second trial, respondent was found to have committed acts, which, if he were an adult, would have constituted simple assault, *N.J.S.A.* 2C:12–1a; fourth degree criminal mischief, *N.J.S.A.* 2C:17–3; and criminal trespass, *N.J.S.A.* 2C:18–3. He received a two-year probationary disposition. He was also ordered to pay restitution in the amount of $228 at the rate of $25 a week, and to pay $45 to the Violent Crimes Compensation Board.

The existence of the vandalism, the damage and that it was done by a group of juveniles, was undisputed.[1] D.P. claimed that he had not been there, and the primary factual dispute at trial was identification. The circumstances prompting the mistrial occurred when the prosecutor put on his fourth witness. It is a fair reading of the testimony that John,[2] a juvenile co-defendant who had pleaded guilty, was the first witness to involve D.P. in the vandalism. John said he had talked into a tape recorder to the police which had resulted in his giving a statement to them concerning his involvement and the involvement of others in the incident. When the prosecutor asked him about this statement, John said that he could not remember if he had mentioned D.P. as one of the vandals.

The prosecutor then asked John,

Q. When did you first indicate or remember that [D.] P. was involved?

A. When I was talking to you.

Q. Okay, and at that point did you have an opportunity to tell me that he was involved?

A. Yes, I did.

---

[1]According to the testimony, every window in the house was shattered. All the wire screens and plastic covering the windows were ripped down. The glass covering the electric meter was shattered. The front porch door was knocked inward off its hinges, shattering the doorway. The inside door had a 2″ by 8″ by 10′ plank rammed through the window. Part of a tree trunk was observed in the living room window opening.

[2]The juvenile respondents are identified by initials. Because initials were shared by more than one person, we have given witnesses pseudonyms.

Defense attorneys stopped the questioning by objecting, saying that the prosecutor would be called as a witness for the defense. D.P.'s counsel represented that on the same day John had spoken to the prosecutor, he had earlier pleaded guilty but that in giving a factual statement in support of his plea, he had not mentioned D.P. Given the clear implication that this witness had been influenced by the State in his identification testimony, counsel asserted that the prosecutor was a crucial witness. The trial judge was clearly surprised. He declared a recess and a mistrial, saying,

> There is now clear testimony where the, by question and answer, that the Prosecutor suggested to the witness that you told me something. That thereby makes him a potential witness.

> \* \* \* \* \* \* \* \*

> And it doesn't do any good for Mr. Shapiro and Mr. Woods, which they might be willing to do, to say, well, we won't call Mr. Clarke. That's fine, but in an attempt to straighten out the matter, but should I find against their clients, their clients might fairly say and certainly I wouldn't angry [sic] with them if they said it. You know, we should have made Clarke testify too.

Following the mistrial declaration and termination of this first trial, three days later, there was a second hearing on D.P.'s claim that he could not be retried because a retrial would put him twice in jeopardy. The court concluded that a retrial was not barred, despite his acknowledgment that defense counsel had indicated opposition to the court's *sua sponte* declaration. The trial judge indicated that he was hearing the motion on his last day, and that if he had granted an adjournment, the trial would have to be continued by another judge.

D.P. was ultimately tried a second time before another judge. This appeal followed the ensuing adjudication of delinquency.

We are first clear that the same double jeopardy principles of the *U.S. Const.*, Amend. V and XIV and the *N.J. Const.* (1947) Art. I, par. 11, apply to delinquency trials. *Breed v. Jones*, 421 *U.S.* 519, 529, 95 *S.Ct.* 1779, 1785, 44 *L.Ed.*2d 346, 355 (1975) (delinquency adjudication bars retrial as an adult); *State in Interest of C.K.*, 198 *N.J.Super.* 290, 292 (App.Div.1984). These rulings accord with the Supreme Court's mandate that

juveniles are entitled to a majority of the constitutional protections which must be afforded to adults accused of crime [3] as well as our Supreme Court's holding that New Jersey applies federal double jeopardy principles. *State in Interest of C.K.,* 198 *N.J.Super.* at 292 n. 2. It is also clear that jeopardy had attached in this case, since in a nonjury case, jeopardy attaches when the first witness is sworn. *State v. Lynch,* 79 *N.J.* 327, 341 (1979).

Nonetheless, not every mistrial results in the application of the double jeopardy bar. Due consideration must be given to "the ends of public justice." *United States v. Perez,* 22 *U.S.* 579, 6 *L.Ed.* 165 (1824). The question is whether the trial terminated because of a "manifest necessity." *Ibid.* What constitutes "manifest necessity" depends upon the particular facts of each case. *Compare United States ex rel. Russo v. Superior Court of N.J.,* 483 *F.*2d 7 (3d Cir.1973), *cert.* den. 414 *U.S.* 1023, 94 *S.Ct.* 447, 38 *L.Ed.*2d 315 (1973) (double jeopardy attached when mistrial was declared because jurors were tired) *with Illinois v. Somerville,* 410 *U.S.* 458, 93 *S.Ct.* 1066, 35 *L.Ed.*2d 425 (1973) (double jeopardy did not attach when mistrial declared to cure indictment error).

In *N.J.S.A.* 2C:1–9, our criminal code adopted the test enunciated in *State v. Romeo,* 43 *N.J.* 188, 195–196 (1964), *cert.* den. 379 *U.S.* 970, 85 *S.Ct.* 668, 13 *L.Ed.*2d 563 (1965), which held that double jeopardy did not attach when a mistrial was declared because the State would not consent to continuance of the trial with 11 jurors. *N.J.S.A.* 2C:1–9d provides:

A prosecution of a defendant for a violation of the same provision of the statutes based upon the same facts as a former prosecution is barred by such former prosecution under the following circumstances:

\* \* \* \* \* \* \* \*

d. The former prosecution was improperly terminated. Except as provided in this subsection, there is an improper termination of a prosecution if the termination is for reasons not amounting to an acquittal, and it takes place

---

[3] *See In re Gault,* 387 *U.S.* 1, 87 *S.Ct.* 1428, 18 *L.Ed.*2d 527 (1967).

after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts. Termination under any of the following circumstances is not improper:

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

(3) The trial court finds that the termination is required by a sufficient legal reason and a manifest or absolute or overriding necessity.

The Code Commentary expressly rejected categorizing circumstances justifying a declaration of a mistrial for "manifest necessity" but referred to the formulation in *State v. Romeo* for examples:

... incapacitating illness of the judge or a juror or jurors or of the defendant, or misconduct or disqualification of some members of the jury, or on account of an untoward incident that renders a verdict impossible ... [provided] that the abortive termination be for a sufficient legal reason.... [The New Jersey Penal Code, Volume II: Commentary, Final Report of the N.J. Criminal Law Revision Commission (1971), quoting *State v. Romeo*, 43 *N.J.* at 195].

In determining what circumstances constitute a "manifest necessity" for a new trial, we begin with the leading United States Supreme Court case in which a mistrial declaration did not bar retrial, *Gori v. United States*, 367 *U.S.* 364, 81 *S.Ct.* 1523, 6 *L.Ed.*2d 901 (1961), reh'g den. 368 *U.S.* 870, 82 *S.Ct.* 25, 7 *L.Ed.*2d 70 (1961). As in this case, the trial judge there on his own motion declared a mistrial, having inferred that the prosecuting attorney's line of questioning had advanced an impermissible and prejudicial inquiry into other crimes of the accused. *Id.* at 365–366, 81 *S.Ct.* at 1524–1525, 6 *L.Ed.*2d at 902–903. The record was less than clear but the Supreme Court focused on whether the trial judge in declaring a mistrial was acting to protect defendant's rights. The Court gave future guidance, saying, if "for reasons deemed compelling by the trial judge, ... the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment," *id.* at 368, 81 *S.Ct.* at 1526, 6 *L.Ed.*2d at 904 (citing numerous authorities), so long as the court acted "in the sole interest of the defendant...." *Id.* at 369, 81 *S.Ct.* at 1526, 6 *L.Ed.*2d at 905. In

*United States v. Jorn,* 400 *U.S.* 470, 91 *S.Ct.* 547, 27 *L.Ed.*2d 543 (1971), however, the Court held that double jeopardy did attach when a mistrial was declared because the State's witnesses had not been properly advised of their Fifth Amendment rights.

In the more recent case of *Arizona v. Washington,* 434 *U.S.* 497, 515–516, 98 *S.Ct.* 824, 835–836, 54 *L.Ed.*2d 717, 734 (1978), the trial judge granted the prosecutor's motion for a mistrial based upon defense counsel's opening which referred to the prosecutor's having hidden evidence from defendant at an earlier trial. The Supreme Court again declared that double jeopardy did not bar a retrial, saying that the judge acting responsibly is in the best position to assess the effect of harmful error. While continuing to focus on the trial judge's concern for the rights of the defendant, the Court was divided on the question of the extent to which alternatives must be pursued by the trial judge before a mistrial may be declared without bringing about a double jeopardy bar. *Id.* at 525, 98 *S.Ct.* at 840, 54 *L.Ed.*2d at 740 (Marshall, J., dissenting).

In *United States v. McKoy,* 591 *F.2d* 218 (3d Cir.1979), the court held that double jeopardy attached when a mistrial was declared in order to permit defendant to have independent counsel, there being a question of whether defense counsel should be a witness in the case. The circumstances of this holding are significant, given the surface similarity with this case. We derive several important distinctions. First, in *McKoy* the trial judge knew well in advance of trial that defense counsel might be a witness. *Id.* at 221. Second, the Third Circuit considered that the trial court had interfered with the client/attorney relationship by insisting that defendant be counseled by independent counsel despite her apparent willingness to proceed and not call her attorney as a witness. *Id.* at 222 n. 5. Third, the court considered the existence of alternatives to the mistrial compelling, particularly the alternative of a short adjournment for defendant to consult with an independent attorney. *Id.* at 222.

In *Crawford v. Fenton*, 646 *F*.2d 810 (3d Cir.1981), *cert.* den. 454 *U.S.* 872, 102 *S.Ct.* 344, 70 *L.Ed.*2d 178 (1981), the trial judge declared a mistrial after receiving notes from the jury 24 times, demonstrating its confusion between special interrogatories and its general verdict. A divided Third Circuit held that the trial judge acted within his discretion in declaring the mistrial, noting the "broad deference" afforded to the trial judge's discretion in such matters. *Id.* at 818. The majority rejected the contention that trial courts must consider all "obvious and adequate alternatives." Rather, the court concluded that the presence of an alternative (recharging the jury) was merely a factor to be considered in assessing the propriety of the trial court's mistrial declaration, so long as the mistrial was not granted in order to allow the prosecutor to achieve a tactical advantage. *Id.* at 817.

In *State v. Farmer*, 48 *N.J.* 145 (1966), *cert.* den. 386 *U.S.* 991, 87 *S.Ct.* 1305, 18 *L.Ed.*2d 335 (1967), the trial court declared a mistrial because of a discovery order which the State had unwittingly not obeyed until the middle of trial. When it was clear that documents vital to the defense had not been given to defense counsel in a timely manner, the court was faced with the dilemma of forcing defendant to continue the trial despite being unprepared, grant an adjournment, or suppress the documents vital to the State's case. Our Supreme Court said that the declaration of a mistrial "represented the most sensible balancing of the interests of the defendant and the public." *Id.* at 174.

In the more recent case of *State v. Rechtschaffer*, 70 *N.J.* 395, 416 (1976), the Court held that jeopardy attached when the trial court declared a mistrial on one count, based upon a witness's testimony which quoted the defendant as making threats to kill any informer concerning his drug involvement. The trial court permitted a verdict to be rendered on a lesser included offense. The Supreme Court did not find the testimony in question inadmissible, ruling that alternatives respecting a limiting charge to the jury should have been explored if the

trial court believed that the testimony should not have been admitted. *Id.* at 413. The Court further declared that if a mistrial had been necessary, there should have been a mistrial on all counts. *Id.* at 412.

In *State v. Blanks,* 190 *N.J.Super.* 269, 278 (App.Div.1983), we held that double jeopardy did not attach when a mistrial was declared because defendant's purported accomplice testified that he had been previously tried and found not guilty. We held that the declaration of the mistrial was within the trial judge's "permissible discretionary range" in order to protect the rights of the public. *Ibid.* In *State v. Laganella,* 144 *N.J.Super.* 268 (App.Div.1976), app. dism. 74 *N.J.* 256 (1976), the State appealed from a trial judge's dismissal of the indictment following the presentation of State's witnesses because the State had assertedly failed to comply with its discovery obligation. In reviewing the record on appeal, we found that the State had not so failed. The question on appeal was whether double jeopardy prevented a new indictment. Following a full examination of the history of double jeopardy, we reiterated that the constitutional analysis was the same under the law of New Jersey and the United States Constitution. Under either, "we have become increasingly candid in our facing up to an awareness that important interests other than those of defendant alone are involved in the trial of criminal cases." *Id.* at 287. We contrasted *Farmer* with *Rechtschaffer,* concluding that, "[t]o apply the bar of double jeopardy in the instant matter, absent compelling considerations of fairness to defendant or for the purpose of protection against governmental action found by us not to be arbitrary, would disserve that purpose, for there still has been no trial on the merits." *Id.* at 290. In *State v. Stani,* 197 *N.J.Super.* 146, 151 (App.Div. 1984), we held that a mistrial based upon the State's inability to proceed with its case would result in a double jeopardy bar. To do otherwise would be to give the State another chance to perfect its otherwise imperfect case, the very essence of the harm that the double jeopardy bar must prevent.

■ While a juvenile may not be tried twice for the same crime, there are occasional special circumstances incidental to the juvenile court procedure. In *State in Interest of C.V.*, 146 *N.J.Super.* 573 (App.Div.1977), certif. den. 74 *N.J.* 258 (1977), the State appealed from the dismissal of a charge against a juvenile for assault and battery. The charge had been dismissed because a judge had previously declared a mistrial *sua sponte* on the same charge so that the juvenile could obtain legal assistance. We found that the declaration of the mistrial was not an abuse of discretion and reversed the dismissal, remanding the matter for trial.[4]

■ This analysis of the applicable law persuades us that there is no double jeopardy in this case. To the extent that D.P. relies upon the fact that he did not consent to the mistrial, such consent was not necessary. The judge clearly sought to protect defendant's right to a fair trial and to guaranty him effective assistance of his counsel. The testimony given by John was a surprise. He appeared to be a crucial witness who could place D.P. on the scene. If John testified to D.P.'s presence because the prosecutor had suggested it, no waiver from defense counsel could have prevented harmful error, at least as reasonably viewed by the trial judge.

In this connection John's testimony at the second trial is relevant.

Q. Did there come a time when you gave a statement to the police?
A. Not at first but then I did at my house.
Q. ... who did you tell them was there that night, do you remember?
A. Just me, S. and [Joe] and [Sean].
Q. And that leaves out D.P.
A. Yes.
Q. Why was he left out?

---

[4]The case had evidently been previously placed on an informal trial calendar in which counsel was not required. The court in effect, by terminating a trial in which the juvenile proceeded without counsel, ruled that the charges were too serious for such informal process. *See In re Gault*, 387 *U.S.* at 27, 87 *S.Ct.* at 1443, 18 *L.Ed.*2d at 546.

A. Because I forgot him at first because that was the first night I met him. Then when me and Mr. Clarke [prosecutor] were talking about it I started remembering that he was there.

Q. Who brought up the name D.P. when you were talking to Mr. Clarke?

A. He did 'cause he asked me if I remembered him being there.

Q. And did you remember him?

A. Not at first but then when I started thinking about it I did.

We recognize that D.P. contends that protecting his rights was not paramount. This is because the judge said, when ruling on whether jeopardy had attached that if the juvenile were not to be tried again, he could claim that he had beaten the system because his lawyer was smart. That statement was made after the mistrial had been declared. This, in effect, was no more than a reference to the "ends of substantial justice" which must be weighed along with the right of an accused to be placed only once in jeopardy.

Defendant next claims that there was no necessity for a mistrial since defense counsel agreed not to call the prosecutor as a witness or, if that solution was not acceptable to the trial court, a new prosecutor could have been named to carry on with the case. We have previously rejected the argument that defense counsel's agreement not to call the prosecutor was an alternative which the court was obliged to accept given the potential for harmful error.

█ Ordinarily adjournments are within the discretion of the trial court. *See State v. Kyles,* 132 *N.J.Super.* 397, 402 (App. Div.1975); *State v. Lamb,* 125 *N.J.Super.* 209, 213 (App.Div. 1973). As our Supreme Court noted in *State v. Farmer,* 48 *N.J.* at 173, "it could not be estimated with any degree of probability what time would be required reasonably for the purpose [trial preparation based on new information]." As the Court further said, "[a]ssuming we felt ... that a recess for a reasonable period was worthy of a try, we would refrain from expressing such an opinion now, for to do so would be an unwise invasion of the wide scope of discretion intrusted to the trial judge." *Ibid.*

The circumstances here are to be contrasted with those found by the court in *United States v. McKoy*, 591 *F.*2d 218. An adjournment sufficient to permit an adult defendant to talk on one topic to a lawyer is not the same as an adjournment sufficient to permit a new lawyer to prepare to try a case. Moreover, the judge here was clearly affected by his knowledge that he himself would not be able to continue the case. Thus he was faced with the unavailability of the same factfinder, one of the prime reasons for defendant's right to a continued trial.

Having concluded that the court's primary motivation was to protect the juvenile's rights, we are thus further satisfied that the judge did not fail to consider the adjournment alternative. His ruling that such an adjournment was "unfair" was within the limits of his discretion. Accordingly D.P.'s retrial was not barred. *State v. Blanks*, 190 *N.J.Super.* at 278; *Crawford v. Fenton*, 646 *F.*2d at 818.

██ Separately D.P. contends that the prosecutor was in violation of his duty to disclose evidence in his favor by "continually" withholding critical exculpatory evidence, specifically, the handwritten notes made during the prosecutor's interview with John which was the subject of the mistrial, the transcript or tape recording of the statement assertedly made to the police officer by John, and the prosecutor's notes made from a statement of another juvenile. *See Brady v. Maryland*, 373 *U.S.* 83, 87, 83 *S.Ct.* 1194, 1196, 10 *L.Ed.*2d 215, 218 (1963).

Where information is requested of the prosecutor, and not produced, the standard of materiality justifying a new trial is whether the withheld evidence might have affected the outcome of the trial. *United States v. Agurs*, 427 *U.S.* 97, 104, 96 *S.Ct.* 2392, 2398, 49 *L.Ed.*2d 342, 350 (1976); *State v. Carter*, 91 *N.J.* 86, 112 (1982). Where anything less than a specific request is made, information which is withheld by the prosecutor will be considered material only if the omitted evidence creates a reasonable doubt that did not otherwise exist. *United States v.*

*Agurs,* 427 *U.S.* at 112, 96 *S.Ct.* at 2401, 49 *L.Ed.*2d at 355; *State v. Carter,* 91 *N.J.* at 112.

We find, following these standards, that there was no error. D.P. had the benefit of the prosecutor's notes at trial. The trial court credibly found that the tape recording either never existed or had been destroyed through no fault of the State. The statement taken from the other juvenile witness was found to involve co-defendant, S.H., not D.P. These findings accorded with the record. There was no error, let alone harmful error.

The finding of delinquency is affirmed.