STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
WILLIAM GALLEGAN AND WILLIAM O'HAGEN,
DEFENDANTS–RESPONDENTS.

Argued September 12, 1989—Decided December 20, 1989.

*Samuel J. Marzarella,* Assistant Prosecutor, argued the cause for appellant (*James W. Holzapfel,* Ocean County Prosecutor, attorney).

*Gaetano J. Alaimo* argued the cause for respondents.

*John Kennedy,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Peter N. Perretti, Jr.,* Attorney General, attorney).

The opinion of the Court was delivered by

O'HERN, J.

Stripped of its procedural prolixity, the central question in this appeal is whether a determination by a municipal court judge to adjourn the continued trial of a case because of the unavailability of the municipal prosecutor who had tried the earlier portions of the case constituted a termination of the trial, thus barring renewal of the trial under principles of double jeopardy. We hold that principles of double jeopardy do not require that result, and therefore reverse the contrary judgment below.

The case presents in many ways the converse of *State v. Stani,* 197 *N.J.Super.* 146 (App.Div.1984). In that case the trial court declared a mistrial when the State was unprepared to proceed. On appeal of an attempt to retry the defendant, the court held that if the trial court erred in not granting a postponement as requested by the State, it afforded no excuse for stripping defendant of his constitutional rights:

> If there be any essence to the doctrine of jeopardy, it must be that the State may not retreat from the field when its case turns sour and then be permitted to sally forth on a future day before a new jury when its case is refreshed and reinforced. [*State v. Stani, supra,* 197 *N.J.Super.* at 151 (citing *United States v. Jorn,* 400 *U.S.* 470, 479, 91 *S.Ct.* 547, 554, 27 *L.Ed.*2d 543, 553 (1971), and *Downum v. United States,* 372 *U.S.* 734, 737, 83 *S.Ct.* 1033, 1035, 10 *L.Ed.*2d 100, 103 (1963)).]

But in this case the State did not "retreat from the field." Although it would have preferred to have the same prosecutor try the continued case, it was prepared to proceed. That the court itself preferred to proceed with the original prosecutor did not in any sense constitute a termination of the proceedings. No fair appraisal of this record can lead us to the conclusion that the trial court's ruling "reflected an adjudication on the merits * * * [or that the] case was over." *State v. Lynch,* 79

*N.J.* 327, 343 (1979). The trial court may have made an erroneous decision to adjourn the case, but there is a difference between adjourning a case and ruling that the case is over.

## I

The case arises because of an unavoidable tension between our current governmental structure of part-time municipal courts and prosecutors and the ever-increasing importance of municipal court cases. Many of our municipal courts, like this one, conduct night sessions of court, partly as a convenience to the public. It is sometimes impossible to finish a contested case in a single session of court. This was a complex and important case. Delay in the disposition of this case was caused by its relationship to other proceedings that resulted in various interlocutory appeals by the defendants, which made the trial even more complex. The case concerns two unrelated criminal incidents involving defendants, William Gallegan and William O'Hagen, which were originally scheduled to be tried together in Dover Township Municipal Court on October 16, 1986. The first incident occurred on July 20, 1986, when a Dover Township officer signed two complaints against Gallegan. The first complaint charged Gallegan with possession of fewer than twenty-five grams of marijuana in violation of *N.J.S.A.* 24:21–20a(4) (now repealed), and physical interference with the administration of the law in violation of *N.J.S.A.* 2C:29–1. The second complaint charged Gallegan with possession of cocaine in violation of *N.J.S.A.* 24:21–20a(1) (now repealed), an indictable offense. However, on August 14, 1986, the Ocean County Prosecutor's Office downgraded the cocaine charge to the disorderly-persons offense of attempting to use a controlled dangerous substance in violation of *N.J.S.A.* 24:21–20b (now repealed) and 24:21–24. This matter was then remanded for adjudication to the Dover Township Municipal Court.

The second incident occurred shortly thereafter on August 25, 1986, when Gallegan and O'Hagen were involved in an

automobile accident on the Garden State Parkway. In the aftermath of the accident, a State trooper issued two summonses to O'Hagen, charging him with driving while intoxicated in violation of *N.J.S.A.* 39:4–50 (DWI), and careless driving in violation of *N.J.S.A.* 39:4–97. Another trooper charged both Gallegan and O'Hagen with consuming alcohol in a motor vehicle contrary to *N.J.S.A.* 39:4–51a.

O'Hagen was seriously injured in the accident, and required medical treatment at Community Memorial Hospital in Dover Township. Gallegan accompanied O'Hagen to the hospital and created a disturbance. As a result of the disturbance, a Dover Township officer signed a complaint against Gallegan, charging him with assault contrary to *N.J.S.A.* 2C:12–1a(1) and resisting arrest in violation of *N.J.S.A.* 2C:29–2a. One of the State troopers originally at the scene of the accident also signed a complaint against Gallegan, charging him with obstructing the administration of the law in violation of *N.J.S.A.* 2C:29–1. While O'Hagen was at the hospital, two vials of blood were drawn from him to be tested for alcohol content. The test showed a blood-alcohol content of .232%.

All of the above matters arising from the July 20 (hereafter "drug") and August 25 (hereafter "DWI/assault") incidents were scheduled for trial in Dover Township Municipal Court on October 16, 1986. On that evening, defense counsel requested an adjournment of the drug charges involving Gallegan in order to complete discovery. The prosecutor did not object, and those matters were accordingly adjourned. The DWI/assault charges concerning both defendants were also adjourned. Both sides continue to dispute who actually requested the adjournment concerning the DWI/assault matters. The prosecution maintains that defense counsel asked for a continuance. Defense counsel maintains that he was ready and willing to proceed but that the court adjourned the matters at the prosecutor's request, indicating that both matters would be scheduled for another date. Regardless of who actually requested

the adjournment, the court agreed with the request and adjourned all the matters for rescheduling.

The matters were next called for trial on November 20, 1986. At that time, the prosecutor requested an adjournment of the DWI/assault charges against both defendants because several witnesses who had been subpoenaed were not present. The absent witnesses included the State trooper who had signed the complaint involving the consumption of alcohol while operating a motor vehicle, the doctor who had drawn blood from O'Hagen for the blood-alcohol test, and the local officer, who was not present due to a work-related injury. Defense counsel requested that the charges be dismissed because an adjournment would violate defendants' right to speedy trial and would subject them to double jeopardy. Rather than granting defense counsel's request for a dismissal, the court adjourned the DWI/assault charges, with the exception of the consumption-of-alcohol complaints under *N.J.S.A.* 39:4–51a. The court was "troubled" by the State trooper's absence and unexplained failure to appear in court in response to the subpoena. It therefore directed verdicts of acquittal on the consumption-of-alcohol complaints against both defendants.

The drug complaints against Gallegan were the next matters on the calendar that evening. Defense counsel challenged the court's jurisdiction on these charges. When the court rejected defense counsel's challenge, counsel requested a stay so that he could take an interlocutory appeal. That appeal was filed on December 1, 1986, and included both the denial of the motion to dismiss the DWI/assault charges and the rejection of Gallegan's jurisdictional argument concerning the drug charges. On May 11, 1987, the Superior Court affirmed the decision of the court below and remanded the charges to the municipal court.

The drug charges against Gallegan were finally adjudicated on June 25, 1987. The remaining DWI/assault charges were called for trial on July 30, 1987. On that evening, the prosecution presented two witnesses: the State trooper present at the

accident scene and the doctor who had taken the blood sample. At 12:10 a.m. on July 31, defense counsel requested that the matter be continued on another date due to the late hour. The court granted that request. It is the policy of our court system not to conduct evening trial sessions in municipal courts after midnight. See Administrative Office of the Courts, Municipal Court Bulletin Letter # 7–75, July 1975.

The trial was scheduled to resume on September 10, 1987. On that date, the municipal prosecutor who had handled the cases on the prior dates was not present due to a vacation conflict. Another municipal prosecutor appeared in his place. The new prosecutor requested that the matters be carried for one week, until the first prosecutor returned from his vacation. Defense counsel objected. On the basis of our decision in *In re Yengo*, 84 *N.J.* 111 (1980), *cert. denied*, 449 *U.S.* 1124, 101 *S.Ct.* 941, 67 *L.Ed.*2d 110 (1981), defense counsel argued that the original prosecutor should be forced to proceed with the case. At that point, the new prosecutor stated that he was prepared to try the case should the court deny the continuance.

The court would neither dismiss the charges nor allow the prosecution to proceed. Although the court believed that there was "an ethical problem or some other substantive problem" with a prosecutor proceeding with a trial that a different prosecutor had begun, the court was also concerned with the significance of the case, and wanted to insure that it heard all the facts before deciding defendants' guilt or innocence. The court also stated that, had it been aware of the municipal prosecutor's scheduling conflict before the trial date, it would have granted the adjournment before September 10 and scheduled the matter for another date. However, it was the deputy clerk of the court, not the judge hearing the case, who denied the prosecutor's request to postpone the September 10, 1987 court date. Thus, the court granted an adjournment until October 6, 1987. After deciding to adjourn the case, the municipal court judge told defense counsel, "I wouldn't blame you a bit if you took me up on an appeal on this one."

Defendants did. On September 28, 1987, they sought leave to appeal to the Superior Court. On October 20, 1987, the Law Division granted defendants' motion. It found that the original municipal prosecutor's failure to appear for trial on September 10 constituted inexcusable prosecutorial neglect. The court also concluded that carrying the case from July until October constituted an unreasonable break in the continuity of the trial. The court applied the rule created in *State v. O'Keefe*, 135 *N.J.Super.* 430 (Law Div.1975), which states that when an unreasonable break in the continuity of the trial is caused by inexcusable neglect of the State, a resumption of the trial would constitute double jeopardy. Agreeing with defense counsel that the defendants would be subjected to double jeopardy were their trial to resume, the court dismissed the complaints and thereafter denied the State's motion for reconsideration.

The Appellate Division affirmed the dismissal in an unreported opinion filed June 17, 1988. The court found that "failing to continue trial on September 10 and instead adjourning for an additional 26 days operated as a termination of the prosecution, revival of which would violate constitutional guarantees against double jeopardy."

We granted the State's petition for certification. 113 *N.J.* 636 (1988).

## II

Judge Lacey, sitting in the Third Circuit, has summarized the values at stake in this case:

> The Double Jeopardy Clause of the fifth amendment is quickly stated: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Constitution, Amendment 5. The problems in interpreting it, however, are not always as readily resolved. "[T]his deceptively plain language has given rise to problems both subtle and complex ..." *Crist v. Bretz*, 437 *U.S.* 28, 32, 98 *S.Ct.* 2156, 2159, 57 *L.Ed.*2d 24 (1978).

> The Supreme Court recently enumerated some of the significant interests served by the Double Jeopardy Clause in the context of a court's *sua sponte* declaration of a mistrial over a defendant's objection.

Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's "valued right to have his trial completed by a particular tribunal." The reasons why this "valued right" merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial. *Arizona v. Washington,* 434 *U.S.* 497, 503–05, 98 *S.Ct.* 824, 829, 54 *L.Ed.*2d 717 (1978) (footnotes omitted).

[*United States v. McKoy,* 591 *F.*2d 218, 221–22 (3d Cir.1979).]

Given these concerns, the Supreme Court has established a stringent test for determining whether retrial can be had after mistrial. To avoid the double-jeopardy bar government "must shoulder the 'heavy burden' of demonstrating that there was 'manifest necessity' for a mistrial declared over a defendant's objection * * *." *Id.* at 222 (quoting *Arizona v. Washington,* 434 *U.S.* 497, 505, 98 *S.Ct.* 824, 830, 54 *L.Ed.*2d 717, 728 (1978)).

Our own Appellate Division has recently catalogued the circumstances in which the improper termination of a trial will bar a retrial of the matter. *State in the Interest of D.P.,* 232 *N.J.Super.* 8 (1989). That court pointed out that "not every mistrial results in the application of the double jeopardy bar. Due consideration must be given to 'the ends of public justice.'" *Id.* at 13 (quoting *United States v. Perez,* 22 *U.S.* (9 *Wheat.*) 579, 580, 6 *L.Ed.* 165, 165 (1824)).

In *D.P.* the court reviewed the standards codified in *N.J.S.A.* 2C:1–9d for declaring a mistrial in a criminal case without barring a retrial because of the defendant's constitutional right to be placed in jeopardy only once for the same offense. The statute provides, in relevant part:

A prosecution of a defendant for a violation of the same provision of the statutes based upon the same facts as a former prosecution is barred by such former prosecution under the following circumstances:

\*       \*       \*       \*       \*       \*       \*       \*

d. The former prosecution was improperly terminated.

    *       *       *       *       *       *       *       *

Termination under any of the following circumstances is not improper:

    *       *       *       *       *       *       *       *

(1) The defendant consents to the termination or waives, by motion to dismiss or otherwise, his right to object to the termination.

    *       *       *       *       *       *       *       *

(3) The trial court finds that the termination is required by sufficient legal reason and a manifest or absolute or overriding necessity.

Here, jeopardy having attached, we must consider whether the postponement allowed by the trial court should in some way be regarded as a mistrial that was not "required by sufficient legal reason and a manifest or absolute or overriding necessity." Even when courts grant a mistrial (much less a continuance of a trial), it does not necessarily follow that retrial is barred. "[W]e have become increasingly candid in our facing up to an awareness that important interests other than those of defendant alone are involved in the trial of criminal cases." *State v. Laganella,* 144 *N.J.Super.* 268, 287 (App.Div.), *appeal dismissed,* 74 *N.J.* 256 (1976). In *Laganella,* the court ruled that a dismissal of an indictment following the presentation of State's witnesses because of the State's failure to comply with a discovery obligation did not necessarily bar retrial. The court concluded that "[t]o apply the bar of double jeopardy in the instant matter, absent compelling considerations of fairness to defendant or for the purpose of protection against governmental action found by us not to be arbitrary, would disserve that purpose, for there has still been no trial on the merits." *State v. Laganella, supra,* 144 *N.J.Super.* at 290.

In a whole series of cases discussed in *D.P., supra,* 232 *N.J.Super.* 8, courts have carefully focused on the trial judge's concerns for each of those considerations in determining how to conduct a trial. Coincidentally, one of the alternatives given to courts in order to avoid the unnecessary termination of proceedings is to take advantage of the opportunity to adjourn cases. In *McKoy, supra,* 591 *F.*2d at 222, the Third Circuit ruled that a

mistrial was not justified by a "manifest necessity," nor was it the only means by which the "ends of public justice could be fulfilled" (quoting *United States v. Perez, supra,* 22 *U.S.* (9 *Wheat.*) at 580) because the court could easily have resolved the interests of public justice by granting an adjournment. Of course, in that case a "recess for an hour or two, or overnight, was all that was required." *Id.* at 223. In this case, the municipal court judge adjourned the case until the next regular session of his court at which the prosecutor would be available. This was not a case then in which the municipal court *terminated* the trial, thus "allow[ing] the [S]tate a fresh start at the prosecution of the defendant." *State v. Leonard,* 234 *N.J.Super.* 183, 188 (App.Div.1989).

We have always recognized that ordinarily adjournments are within the discretion of the trial court. *State in the Interest of D.P., supra,* 232 *N.J.Super.* at 19. The *D.P.* court relied on *State v. Farmer,* 48 *N.J.* 145 (1966), *cert. denied,* 386 *U.S.* 991, 87 *S.Ct.* 1305, 18 *L.Ed.*2d 335 (1967), in declining to dismiss proceedings on the basis that the court should have granted an adjournment. As the *Farmer* Court said: "Assuming we felt * * * that a recess for a reasonable period was worthy of a try, we would refrain from expressing such an opinion now, for to do so would be an unwise invasion of the wide scope of discretion intrusted to the trial judge." *Id.* at 173. Thus, it appears that among the obligations of any court in conducting a trial in the interest of public justice is the consideration of whether an adjournment is an available alternative to achieve justice. That is precisely what this court considered, and we should ordinarily not invade "the wide scope of discretion intrusted to the trial judge," *ibid.,* unless it is manifestly necessary.

## III

Although the appeal has focused primarily on the double-jeopardy issue, we must consider as well issues of speedy trial

and fundamental fairness. It is true that a delay in completing a prosecution may, depending on the circumstances, violate a defendant's constitutional right to speedy trial. *Pollard v. United States*, 352 *U.S.* 354, 361, 77 *S.Ct.* 481, 485–86, 1 *L.Ed.*2d 393, 399 (1957). A court would balance factors such as the length of the delay, the reasons for the delay, defendant's assertion of his right to speedy trial, and any prejudice to defendant caused by the delay. *Barker v. Wingo*, 407 *U.S.* 514, 530, 92 *S.Ct.* 2182, 2191, 33 *L.Ed.*2d 101, 117 (1972). Any delay that defendant caused or requested would not weigh in favor of finding a speedy trial violation. *United States v. Loud Hawk*, 474 *U.S.* 302, 316, 106 S.Ct. 648, 656–57, 88 *L.Ed.*2d 640, 655 (1986); *Barker v. Wingo, supra,* 407 *U.S.* at 529, 92 *S.Ct.* at 2191, 33 *L.Ed.*2d at 116.

It is plain that the major delays in the disposition of this case were caused by defendants' interlocutory appeals. In saying this, we intend no criticism of defense counsel's strategy or conduct. He had to fight this case as hard as he could. As noted, defendants requested the first adjournment and the State the second, but almost all the delay thereafter (with the exception of a brief time in September 1987 to have the original prosecutor brought back in) has been occasioned by the two interlocutory appeals of defendants that have brought us to the present time.

Interests of substantial justice, however, do not permit endless adjournments and delays in trials of cases of the significance of this DWI/assault case. We have always recognized the interaction between principles of double jeopardy and fundamental fairness. *See State v. Yoskowitz*, 116 *N.J.* 679 (1989); *State v. Lynch*, 79 *N.J.* 327 (1979); *State v. Tropea*, 78 *N.J.* 309 (1978). We have also ruled, primarily on grounds of fundamental fairness, that a defendant may not be subjected to repeat trials involving the same or related crimes, particularly when the State has had an adequate and reasonable opportunity to prosecute the defendant. *See, e.g., State v. Abbati*, 99 *N.J.* 418

(1985); *State v. Gaffey,* 92 *N.J.* 374 (1983); *State v. Gregory,* 66 *N.J.* 510 (1975).

Such rulings are bottomed on the principle of fundamental fairness. "[T]he methods employed by the State must measure up to commonly accepted standards of decency of conduct to which government must adhere." *State v. Talbot,* 71 *N.J.* 160, 168 (1976). This command to avoid arbitrariness reflects an equation between individual rights and government action. *Mathews v. Eldridge,* 424 *U.S.* 319, 96 *S.Ct.* 893, 47 *L.Ed.*2d 18 (1976). Whether phrased in terms of due process or in terms of fundamental fairness, these principles must be considered.

Defense counsel's argument to the Law Division was appealing. As he put it:

> [W]here's the fairness in a quasi-criminal case of us starting a case in July and then ending it sometime in the wintertime? It's just impossible. No matter how good the notes are that we take and no matter how good the judge's recollection is, we are not getting a fair trial.

The argument appears to have appealed to the Law Division, which concluded:

> I find in this particular case that, even considering all the other aspects of it, that the fact that the trial was partially completed on July 30th, 1987, to carry it at this point because of what occurred until sometime well into October of 1987 constitutes an unreasonable break in the continuity of the trial.

But this appealing theory overlooks the fact that not only did defense counsel not object to the July adjournment, but he requested it because of the lateness of the hour. Thus, defense counsel stated to the municipal court at the September 10 hearing: "I consented [in July] and we don't have that problem of double jeopardy coming out because of the adjournment last time." Nor did he request on July 30 a day-by-day continuance of the case. Court and counsel discussed the procedure for continuing the case, suggesting that it be done either "a couple of hours every Monday until we're done or we'll go every Thursday night for a couple of hours after we're done [the regular calendar] once we reschedule it and somebody suggest that to Miss Chapter [the clerk]." In sum, defense counsel sees the issue as we see it, in terms of the September action of the

municipal court, not as the Law Division saw it, in terms of an adjournment from July to October. Hence, we must determine whether the September action of the municipal court offended principles of fundamental fairness.

We have no sense here that the conduct of the government on that September hearing night could be regarded as anything other than inattentive. How can the State be charged with "inexcusable prosecutorial neglect" under *O'Keefe* when the State came into court ready to move the case? It may have been an unwise judgment on the part of the municipal court, but surely not the neglect of the prosecution, when the court adjourned the matter. The court could not lightly have dismissed a DWI/assault case when the State was prepared to proceed. The accident alone involved six vehicles and substantial injuries.

Defense counsel relies on *In re Yengo*, 84 *N.J.* 111, *supra*, for the proposition that a stand-in prosecutor could not take over a case without familiarity with or a transcript of the proceedings. However, *Yengo* concerns the conduct of defense counsel who sends an unversed substitute to sit in on a complex criminal trial to the prejudice of his client's sixth amendment rights. This case could have proceeded with the stand-in prosecutor. The court chose not to have it proceed.

The principal concern of reviewing courts in circumstances like these is whether the mistrial or continuance is granted in order to allow the prosecution to obtain a tactical advantage. *Crawford v. Fenton*, 646 *F.*2d 810 (3d Cir.), *cert. denied*, 454 *U.S.* 872, 102 *S.Ct.* 344, 70 *L.Ed.*2d 178 (1981). This case is a far cry from those cases in which prosecutorial misconduct provokes a court into granting a mistrial. *See State v. Nappo*, 185 *N.J.Super.* 600 (Law Div.1982); *State v. O'Keefe, supra*, 135 *N.J.Super.* 430. In such circumstances principles of double jeopardy prevent a retrial, but there must be some showing of bad faith on the part of the prosecutor. *Oregon v. Kennedy,*

456 U.S. 667, 674, 102 S.Ct. 2083, 2088–89, 72 L.Ed.2d 416, 423 (1982); *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267, 276 (1976); *State v. Rechtschaffer*, 70 N.J. 395, 406 (1976); *State v. Farmer, supra*, 48 N.J. at 174. As the Supreme Court stated in *Oregon v. Kennedy:* "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.". 456 U.S. at 676, 102 S.Ct. at 2089, 72 L.Ed.2d at 425.

As defense counsel correctly summarizes in his brief, the question is whether the prosecution intended to subvert defendants' protection against double jeopardy by prosecutorial misconduct. We simply do not find that intent here. All that appears here is that there was (in the words of defendants' brief) "a scheduling conflict" that prevented the prosecutor from appearing in court on the night of September 10, 1987. We think that the court, whether it misjudged the need or not, believed that it was acting to achieve "the ends of public justice." *United States v. Perez*, 22 U.S. (9 *Wheat.*) 579, 580, 6 L.Ed. 165, 165 (1824). In these circumstances, we think that the declaration of an adjournment could be seen to represent "the most sensible balancing of the interests of the defendant and the public" at that time. *State v. Farmer, supra*, 48 N.J. at 174.

## IV

Finally, a word or two about the final disposition of this case. The question arises whether or not the long intervening delay has substantially interfered with any rights of the defendants. We have no way of knowing how readily it may be possible to reassemble the trial court, witnesses, and defense team and to restore the parties to the position they would have been in had the case continued on the evening of September 10, 1987. It may be that a better alternative would be to run the case anew.

*See State in the Interest of D.P., supra,* 232 *N.J.Super.* 8. In that case the court, confronted by a need for a postponement and its inability to conclude the case, declared a mistrial. We are not suggesting that this need be the course. But if the defendants, in the interest of that balancing required by fundamental fairness, deem it to be necessary, the court should accede to their request and the trial should commence anew. The trial court should make every effort to conduct a continuous trial of the matter.

Defendants also raised a procedural objection to the State's appeal to the Appellate Division. Defendants contended that the State's motion for reconsideration in the Law Division did not toll the time within which to appeal. *R.* 2:4-3. The Appellate Division treated the appeal as timely. We leave that disposition undisturbed. We note also that defendants did not cross-petition this Court for review of that issue.

The judgment of the Appellate Division is reversed and the matter remanded for further proceedings in accordance with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.