122 N.J. Super. 137 (1973)
299 A.2d 419
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
KARL TILLMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1972.
Decided January 5, 1973.
*139 Before Judges CARTON, MINTZ and MEANOR.
Mr. Edward J. Dimon, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. VanNess, Public Defender, attorney).
Mr. Eugene H. Farber, Assistant Prosecutor, argued the cause for respondent (Mr. Geoffrey Gaulkin, Hudson County Prosecutor, attorney; Mr. Edwin H. Stern, First Assistant Prosecutor, of counsel; Mr. Harvey S. Werblowsky, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by CARTON, P.J.A.D.
Defendant was convicted on charges of armed robbery of one Bennett and one Narkiewicz. His principal contention on appeal and the only one in which we find merit is that the trial court committed reversible error in denying his motion for mistrial on the ground that there had been a violation of the trial court's sequestration order.
The general rule is that the determination whether to grant an order of sequestration in a criminal trial rests in the discretion of the trial judge. See 6 Wigmore, Evidence, (3d ed. 1940), § 1837 et seq.; Annotation, "Prejudicial effect of improper failure to exclude from courtroom or to sequester or separate state's witnesses in criminal case," 32 A.L.R.2d 358 (1953). The same rule has been held to apply as to remedial action which should be taken by the trial judge when it appears the order has been violated. See Annotation, "Effect of witness's violation of order of exclusion," 14 A.L.R.3d 16 (1967); 53 Am. Jur., Trial, § 33 at 48 (1945).
*140 The appellate courts of this State have carefully circumscribed the exercise of the trial court's discretion with respect to the procedure to be followed where there has been a timely application for sequestration. They have not hesitated to order a new trial regardless of whether actual prejudice was demonstrable where such motion for sequestration has been arbitrarily denied. State v. Duffen, 104 N.J. Super. 302, 303 (App. Div. 1969). Cf. State in the Interest of W.O., 100 N.J. Super. 358, 363 (App. Div. 1968); State v. Hines, 109 N.J. Super. 298, 307 (App. Div. 1970), certif. den. 56 N.J. 248 (1970), cert. den. 400 U.S. 867, 91 S.Ct. 108, 27 L.Ed.2d 106 (1970).
The reason for such a mandatory rule is that a showing of prejudice "would be virtually impossible to make, for no one can tell how the later witnesses' testimony might have differed had the motion been allowed." State v. DiModica, 40 N.J. 404, 413 (1963).
A somewhat different approach has been adopted where the court has granted sequestration but the sequestration order has been violated. In that situation we think the rule should properly be that in the absence of prejudice to defendant, such a violation does not constitute reversible error. State v. Smith, 55 N.J. 476, 485 (1969), cert. den. 400 U.S. 949, 91 S.Ct. 232, 27 L.Ed.2d 256 (1970); State v. Michalis, 99 N.J.L. 31, 34 (Sup. Ct. 1923). See State v. Williams, 29 N.J. 27, 46-47 (1959), where it is suggested that fault on the part of the State may be a factor to be considered.
A mistrial is a drastic remedy. Such a remedy should be resorted to only where manifest injustice would otherwise result. State v. DiRienzo, 53 N.J. 360, 383 (1969). For instance, in State v. Smith, supra, where two State witnesses spoke generally to one another and disregarded the sequestration order, a mistrial was denied. The court noted that the motion was untimely made; that there had been no fault on the part of the State, and no showing of prejudice to defendant.
*141 It remains to apply these principles to the facts in this case. At the request of defense counsel, the witnesses for both sides were ordered sequestered. The trial judge explained the order in this fashion:
That means each witness will be called in to testify and no other witness will be in court listening to any of the other witnesses testifying as they do testify.
One of the victims, Bennett, was the first to testify before the jury. After briefly describing the robbery and events leading up to it, his testimony and that of the other victim, Narkiewicz, was then taken on voir dire because the identification of defendant was in issue. Bennett testified first on the voir dire. When his testimony was concluded, the trial judge directed in clear terms that this witness was not to talk to any witness as to what had occurred "nor or during the course of the trial when you're called before the jury. You're not to discuss it with William Narkiewicz or anybody else; do you know that?" Bennett responded in the affirmative. Parenthetically, we observe that it would have been preferable if the trial judge had made the admonition applicable to all witnesses.
Narkiewicz then testified on voir dire. His testimony was interrupted by a lunch recess. After the recess, defense counsel inquired of him whether he had discussed his morning testimony with anyone. He acknowledged that he had spoken with the prosecutor and that Bennett, as well as the arresting officer and two other persons whose identity was unknown to him, were present. Although stating that he and the prosecutor did not directly discuss his morning testimony, he related that they were "laying the facts on the line." He added that there had been some discussion, although "very little," concerning defense counsel's morning cross-examination of him. Thereupon defense counsel moved for a mistrial.
*142 The prosecutor represented that Narkiewicz had not discussed his testimony with Bennett, but that he, the prosecutor, had gone over the facts of the case and the police report with Narkiewicz in the presence of Bennett, the arresting officer, his investigator, his assistant, and another witness who was to testify the next day. When the testimony continued before the jury, Bennett stated that during the lunch recess he and Narkiewicz discussed the case with the prosecutor but not directly with each other.
The prosecutor's explanation for his action was that he thought he had the right to do so and that he was not limited in talking to his witnesses. The court concluded that although the order had been violated the situation did not warrant a mistrial.
Here there was a clear violation of the sequestration order and fault on the part of the State. There was also a real potential of prejudice to defendant. The defense was that he was not involved in the mugging and the crucial issue was the identity of defendant as a participant in the crime. In this connection, we note that neither Bennett nor Narkiewicz was able to identify defendant as one of the robbers at his first confrontation with defendant. Bennett identified defendant for the first time at the preliminary hearing. Narkiewicz was unable to identify defendant as his assailant about 10 or 15 minutes after the mugging. As a result Tillman was released by the police. Later that night, while riding in a police car, he saw defendant and said: "That's the man." This later confrontation and identification occurred, however, only after he was informed that his friend Bennett's identification card was found in the rear seat of the police car where defendant alone had been.
What occurred here went far beyond a simple interview of witnesses. Even if the witnesses did not speak directly to one another, but merely listened to the prosecutor and the witness who had testified first "laying the facts on the line," *143 the necessary effect was to violate both the letter and the spirit of the sequestration order. Witnesses testifying after such a conference could well be influenced by what they had heard concerning the earlier testimony. This is so even though the violation occurred after Bennett had completed his testimony and Narkiewicz had testified at some length on the voir dire.
Under all the circumstances evidenced by the record, particularly in light of the sharp dispute on the issue of identity, and the absence of any remedial procedures taken by the court to mitigate the prejudicial effect of the violation of the sequestration order, we are of the opinion that a new trial must be granted.
The prosecutor's desire to interview his witnesses does not excuse the violation of the order. That could be readily accomplished by interviewing the witnesses out of the presence of each other.
Inasmuch as there appears to be no established method for handling situations of this kind, the following procedure is suggested: In any case when a violation of a sequestration order has been brought to the attention of the trial judge, he should promptly conduct a voir dire out of the presence of the jury in order to ascertain the nature and extent of such violation. He should thereupon determine what remedial action is required, if any, in the light of all the circumstances. In the extraordinary case "where it appears there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated" (and consequently prejudice cannot be dissipated by other remedial action), the court may grant a mistrial. See United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), quoting United States v. Perez, 22 U.S. (9 Wheat) 579, 6 L.Ed. 165 (1824). Under extraordinary circumstances also, the exact nature of which we need not determine here, consideration may be given to the alternative possibility of excluding the testimony of the offending witness. A caveat *144 must be entered here as to the appropriateness of this remedy in a criminal case as affecting the defendant's constitutional right to a fair trial. See Annotation, supra, 14 A.L.R.3d at 54. See also State v. Michalis, supra, and State v. Williams, supra, where it was held that the violation of an order of sequestration by a witness could not deprive the State of the benefit of its witness' testimony where the State was without fault.
Where it does not clearly appear that the violation of the sequestration order possesses a potential for prejudice, a less drastic remedy appears to be proper. The court may, in its discretion, also call the disobedience of the order to the attention of the jury as bearing on the credibility of the witnesses involved. Other jurisdictions have held or recognized that this is a fair and sensible rule. See Annotation, supra, 14 A.L.R.3d at 111-114. In such case the parties may interrogate the witnesses as to what occurred and may comment thereon in their summations. We are also of the opinion that upon the retrial of a case where a mistrial has been granted because of such a violation a similar procedure should ordinarily be followed.
Any remedial procedure of this kind employed to insure the right of a fair trial does not, of course, preclude the use of the contempt process where the court's order has been willfully violated by any party or his witnesses.
Reversed and remanded for a new trial.