704 A.2d 947

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
JAMES COOPER, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 2, 1997—Decided December 24, 1997.

Before Judges LONG, STERN and KLEINER.

*Clifford J. Minor,* Essex County Prosecutor, attorney for appellant (*Raymond W. Hoffman,* Assistant Prosecutor, of counsel and on the brief).

*Pope, Grossman, Bergrin, Toscano & Verdesco,* attorneys for respondent (*Gina L. Mendola,* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

The State appeals from the dismissal of an indictment charging defendant with possession of heroin, *N.J.S.A.* 2C:35–10a(1) (count one), and possession of heroin with intent to distribute, *N.J.S.A.* 2C:35–5b(3). The indictment was dismissed after the trial judge declared a mistrial, at defendant's request, because of the State's violation of a sequestration order. The judge concluded that the mistrial occurred as a result of the prosecutor's "inexcusable neglect," and that the concept of double jeopardy barred a retrial. We reverse.

For present purposes, we adopt the defendant's version of the facts:

Prior to trial, [the judge] issued a sequestration order to be applicable to all the State and defense witnesses. On the first day of trial, the State called Sergeant Neil Minovich of the Newark Police Department who testified as to the events surrounding the arrest of the defendant. [We have not been supplied with this portion of the transcript.] On the second day of trial, the State called Police Officer W. Mehalaris to the stand. This officer also testified to the events leading up to the arrest.

During cross-examination, defense counsel began questioning the witness as to certain statements that appeared to resemble too closely the prior testimony of Sergeant Minovich. In particular, defense counsel asked the speed the officer was traveling when he first passed the Respondent. Officer Mehalaris testified that

they were driving around twenty-five to thirty miles per hour which was the exact response given by Sergeant Minovich when he testified a day earlier.

The following questions were next asked by defense counsel:

Q. When was the last time you discussed this case with any of your colleagues?

A. Probably yesterday with the prosecutor.

Q. When yesterday with the prosecutor?

A. Yesterday afternoon.

Q. Yesterday afternoon? You mean Wednesday afternoon?

A. Yes.

Q. Were your colleagues present when you discussed it?

A. Officers Cannon and Minovich were present.

Q. What time in the afternoon were you discussing it with the other officers?

A. Approximately 4 o'clock.

Q. Four o'clock in the afternoon you were with other officers discussing this case with the prosecutor?

A. That's correct, in his office.

Q. Were you aware of the sequestration order?

A. I was talking to the prosecutor.

Q. ... My question to you is, you told this Court that at 4 o'clock in the afternoon, you were discussing this case with your colleagues, with the prosecutor. Isn't that what you told us?

A. We were in the office talking to the Prosecutor.

Q. And your colleagues were there; correct?

A. Yes.

Q. Were you aware of a sequestration order issued by this Court yesterday?

A. I assume there was a sequestration order.

Q. ... Well, let me just establish that at 4 o'clock in the afternoon, you were with your colleagues discussing this case with the prosecutor; correct?

A. That's correct.

The officer was excused, and a discussion then ensued outside the presence of the jury as to what the appropriate remedy should be for the violation of the sequestration order. The Court next asked the officer to come back in the courtroom and questioned him as to what transpired in the prosecutor's office. The officer admitted that he did have a conversation with the prosecutor and Officers Cannon and Minovich and that some questions were asked of him regarding this incident. Officer Cannon was another officer that was to testify who was also present in the prosecutor's office with Sergeant Minovich who had already testified.

A motion was then heard as to whether the court should declare a mistrial. The officer was called back to the stand. Officer Mehalaris again conceded that the prosecutor asked him "one or two questions about the case" and that he specifically remembered that one of the questions was whether he had spoken with any of the

witnesses who were sitting on the porch in front of where the Respondent was arrested. The prosecutor asked the witness whether he spoke with Sergeant Minovich while in the office, and the officer said he had not. Under further questioning, Officer Mehalaris revealed that he had left the prosecutor's office with Sergeant Minovich and rode down in the elevator with him.

After discussing the matter in chambers and hearing oral argument from both sides in open court, [the trial judge] found that a violation of the sequestration order had occurred. The Court then declared a mistrial, and the jury panel was dismissed. A motion was subsequently filed by defense counsel on the issue of double jeopardy and the barring of a retrial....

The motion was heard on November 1, 1996. [The judge] explained that he had declared a mistrial and had given both sides the opportunity to brief the issue of double jeopardy on the matter. [The judge] questioned the prosecutor as to the purpose of a sequestration order and instructed that it was to prevent the parroting of testimony by a witness who has not testified but has met with someone who has already testified. The prosecutor claimed he did not know Sergeant Minovich was in the room. Defense counsel argued that the room is very small and that visitors are not given entry into a prosecutor's office unless buzzed in by the prosecutor.

[The judge] found that as the room was small and because the prosecutor was aware that a sequestration order was in effect, his conduct amounted to "inexcusable neglect" as defined in *State v. Nappo*, 185 *N.J.Super.* 600, 603 [450 *A.*2d 604] (Law Div.1982), and that the form of the prosecutorial misconduct barred retrial of the charges because of double jeopardy considerations.

(Transcript references and footnote omitted.)

Despite defendant's suggestion to the contrary, the judge did not cite *State v. Nappo*, 185 *N.J.Super.* 600, 450 *A.*2d 604 (Law Div.1982), in his opinion dismissing the indictment. However, he did refer to it during argument on the motion. The judge's opinion dismissing the indictment merely disagreed with the prosecutor's statement that, given the size of the room in his office and the number of people therein, he "could not have known" he was discussing the case with an officer who had not yet testified while one who had already testified was also present.[1] Based on his disagreement, the judge concluded that such conduct amounted to "[in]excusable neglect."

---

[1] We have not been presented with the sequestration order or told what is provided. It is appropriate to make clear precisely what is being ordered when a sequestration order is entered.

*State v. Nappo* involved the dismissal of a municipal court case at defendant's request when the prosecuting attorney failed to appear on the date to which cross-examination of a State's witness was to be carried. 185 *N.J.Super.* 600, 450 *A.*2d 604. Another municipal judge declined to dismiss a complaint which was subsequently filed charging the same offense, together with a second complaint alleging a similar charge known to the State at the time of original filing. *Id.* at 602, 450 *A.*2d 604. On appeal, the Law Division reversed and dismissed the new complaints. *Id.* at 607, 450 *A.*2d 604. Citing *United States v. Dinitz,* 424 *U.S.* 600, 611, 96 *S.Ct.* 1075, 1081, 47 *L.Ed.*2d 267, 276 (1976), the Law Division noted that retrials are precluded,

> after a mistrial granted at defendant's request, [when the mistrial is based on] "governmental actions intended to provoke mistrial requests" or "bad-faith conduct by [the] prosecutor [which] threatens the 'harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant."
>
> [*Nappo, supra,* 185 *N.J.Super.* at 603, 450 *A.*2d 604.]

The Law Division further noted that Justice Rehnquist's treatment of *Dinitz* in the majority opinion in *United States v. Scott,* 437 *U.S.* 82, 94, 98 *S.Ct.* 2187, 2195, 57 *L.Ed.*2d 65, 76 (1978) "as accepting the prohibition [to retrial] only when the prosecutor specifically intended to provoke a mistrial," was not the law as enunciated in subsequent federal or New Jersey cases. *Nappo, supra,* 185 *N.J.Super.* at 604, 450 *A.*2d 604. The Law Division in *Nappo* found the non-appearance of the prosecutor was either "intended· to provoke the motion" to dismiss the case or, when combined with the new filings, was "motivated by bad faith or undertaken to harass the defendant." *Id.* at 605, 450 *A.*2d 604. Hence, the Law Division dismissed the new complaints and held that defendant was to be deemed acquitted. *Id.* at 607, 450 *A.*2d 604.

Following the *Nappo* decision, the United States Supreme Court decided *Oregon v. Kennedy,* 456 *U.S.* 667, 102 *S.Ct.* 2083, 72 *L.Ed.*2d 416 (1982), in which Justice Rehnquist's majority opinion revisited *Dinitz* and the impact of a defendant's motion for mistrial as a waiver of the double jeopardy preclusion. Although

four members of the Court, speaking through Justice Stevens, urged that "an exception for overreaching or harassment should remain available for the rare case in which it may be needed," 456 *U.S.* at 691, 102 *S.Ct.* at 2097, 72 *L.Ed.*2d at 435, Justice Rehnquist recognized "that language taken from our earlier opinions may well suggest a broader rule," and he narrowed the exception to the general rule that a defendant's motion for mistrial constitutes a waiver of his or her double jeopardy rights, 456 *U.S.* at 677–78, 102 *S.Ct.* at 2090, 72 *L.Ed.*2d at 426.

In *Oregon v. Kennedy,* the Supreme Court held that a mistrial, even though on defendant's motion, can preclude retrial when "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." 456 *U.S.* at 679, 102 *S.Ct.* at 2091, 72 *L.Ed.*2d at 427. Justice Rehnquist explained that a broader exception was inappropriate because a reversal following a guilty verdict does not preclude retrial, and judges "might well be more loathe to grant a defendant's motion for mistrial" if the rule were different. 456 *U.S.* at 676, 102 *S.Ct.* at 2090, 72 *L.Ed.*2d at 425. Thus,

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion ... does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott,* [437 *U.S.* 82, 93, 98 *S.Ct.* 2187, 2195, 57 *L.Ed.*2d 65 (1978).] Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." *United States v. Dinitz,* [424 *U.S.* at 609, 96 *S.Ct.* at 1080, 47 *L.Ed.*2d at 274–75.] Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.
>
> [*Oregon v. Kennedy,* 456 *U.S.* at 675–76, 102 *S.Ct.* at 2089, 72 *L.Ed.*2d at 424–25.]

■ Our state constitutional double jeopardy protection is coextensive. *See, e.g., State v. D'Amato,* 218 *N.J.Super.* 595, 602 n. 1, 528 *A.*2d 928 (App.Div.1987), *certif. denied,* 110 *N.J.* 170, 540 *A.*2d 169 (1988); *State v. DeMarco,* 211 *N.J.Super.* 421, 423–25, 511

*A*.2d 1251 (App.Div.1986). Thus, our Supreme Court has stated that retrial is not barred when a case is mistried pursuant to a defendant's motion absent a "showing of bad faith on the part of the prosecutor," *State v. Gallegan*, 117 *N.J.* 345, 357, 567 *A*.2d 204 (1989),[2] and

> "[o]nly where the government conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion."
>
> [117 *N.J.* at 358, 567 *A*.2d 204 (quoting *Oregon v. Kennedy, supra*, 456 *U.S.* at 676, 102 *S.Ct.* at 2089, 72 *L.Ed*.2d at 425).]

*Accord DeMarco, supra*, 211 *N.J.Super.* at 423–25, 511 *A*.2d 1251; *State v. Andrial*, 203 *N.J.Super.* 1, 8, 495 *A*.2d 878 (App.Div.1985); *N.J.S.A.* 2C:1–9d(1).

 We need not decide if the mistrial was properly granted. We are in any event satisfied that, even assuming the prosecutor acted improperly or inexcusably, he did not endeavor to "goad" the defendant into moving for a mistrial. Defendant could have sought to cross-examine the State's witnesses and sum up by reference to the impact of their communications during trial in violation of the sequestration order. *See State v. Tillman*, 122 *N.J.Super.* 137, 143–44, 299 *A*.2d 419 (App.Div.), *certif. denied*, 62 *N.J.* 428, 302 *A*.2d 132 (1973). Having elected to move for a mistrial,[3] defendant also elected not to take his chances with the

---

2 In *Gallegan*, the Law Division on defendant's interlocutory appeal dismissed municipal complaints because the trial prosecutor did not appear on the continued trial date and the municipal judge carried the matter. 117 *N.J.* at 350–51, 567 *A*.2d 204. We affirmed, and the Supreme Court reversed.

3 Significantly, we see this case as involving a defendant's motion for mistrial. Defendant's reliance on *Nappo* and other cases dealing with the exception to the waiver rule based on prosecutorial misconduct supports this view. Although not citing *Oregon v. Kennedy*, the State argues "[t]his mistrial occurred with defendant's consent." When the issue was initially raised during trial, defendant sought to have the testimony of witnesses Mahalaris and Cannon, who had not completed their testimony, be stricken, and the State argued they could be cross-examined on the violation and that defendant could sum up on the issue. When the judge asked defense counsel what the remedy should be if he did not strike

jury and seek reversal for violation of the sequestration order in which event he could be retried with impunity. *Oregon v. Kennedy, supra,* 456 *U.S.* at 672–74, 102 *S.Ct.* at 2087–89, 72 *L.Ed.*2d at 422–23; *State v. Tillman, supra* 122 *N.J.Super.* at 143–44, 299 *A.*2d 419. As a result, his decision to move for a mistrial similarly poses no bar to retrial. *Oregon v. Kennedy, supra,* 456 *U.S.* at 672–74, 102 *S.Ct.* at 2087–89, 72 *L.Ed.*2d at 422–23; *State v. Gallegan, supra,* 117 *N.J.* at 357–58, 567 *A.*2d 204.

The trial judge erroneously relied on the "inexcusable neglect" standard. To the extent he relied on *State v. Nappo,* that opinion must be deemed overruled by the subsequent decision in *Oregon v. Kennedy* and our state's co-extensive treatment of the federal double jeopardy rights.

The judgment is reversed, and the matter is remanded for trial.

the testimony, defendant requested a "mistrial." The judge stated that he was "not willing to strike [the] testimony" and declared a mistrial. The judge then adjourned the matter for briefing as to whether retrial was barred as a matter of double jeopardy. If the judge improperly denied the relief defendant sought, we might not view this case as involving a mistrial with defendant's consent. However, as the judge was correct in denying defendant's initial request to strike the testimony, we must view this case as involving defendant's motion for mistrial. We also note that "[m]istrials declared with the defendant's consent do not bar later prosecution." *Love v. Morton,* 112 *F.*3d 131 (3d Cir.1997), citing *United States v. Dinitz, supra,* 424 *U.S.* at 607, 96 *S.Ct.* at 1079–80. *See also* *N.J.S.A.* 2C:1–9(d)(1).