# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2064-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

M.A.U.,

    Defendant-Appellant.

_____

Argued February 13, 2024 – Decided April 22, 2024

Before Judges Whipple, Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 19-03-0307.

Nancy E. Lucianna argued the cause for appellant (Law Offices of Nancy E. Lucianna, PC, attorneys; Nancy E. Lucianna, of counsel and on the briefs; Paul Francis Darakjian, on the briefs).

Edward F. Ray, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; Edward F. Ray, of counsel and on the brief).

PER CURIAM

Defendant M.A.U.[1] appeals from his convictions of two counts of sexual assault, N.J.S.A. 2C:14-2(c)(3); and one count of endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) following a jury trial.  We affirm.

A.

We glean the relevant procedural history and facts from the record.  In March 2019, a Bergen County grand jury returned a five-count superseding indictment charging defendant with:  (1) first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(2)(1), for acts committed between January and May  2016; (2) second-degree sexual assault, N.J.S.A. 2C:14-2(c)(3), for acts committed between May 2016 and October 2017; (3) second-degree sexual assault, N.J.S.A. 2C:14-2(c)(3), for acts occurring in November 2017; (4) third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), for acts occurring between January 2016 and November 2017;[2] and (5) third-degree endangering

---

[1]  We use initials to protect the privacy of defendant's victim, A.U.  R. 1:38-3(c)(9).

[2]  Without objection, the State amended the fourth count of the indictment from endangering the welfare of a child (abuse and neglect), N.J.S.A. 2C:24-4(a)(c), to endangering the welfare of a child (engages in sexual conduct which would impair or debauch the morals of a child), N.J.S.A. 2C:24-4(a)(1).

the welfare of a child, N.J.S.A. 2C:24-4(a), for acts occurring between January 2016 and November 2017.[3]

In April 2020, the motion judge heard oral argument on the State's motion to admit the victim's, A.U.'s, testimony regarding defendant's "prior bad act." On June 1, 2020, the motion judge issued a written opinion and executed an order admitting the "prior bad act" evidence.

Three days later, the trial judge held a pretrial conference with counsel and defendant. The conference included discussion of courtroom logistics and the seating of witnesses and others. When the issue of defendant's family members and the witness list arose, the judge stated they would be sequestered. On July 1, 2021, during the second day of jury selection, attended by all counsel and defendant, the judge stated:

> there will be some room here in my courtroom for the victim, the victim advocate, and . . . since [defendant's] relatives are testifying, they[ wi]ll be sequestered[.]
> . . .
>
> But anybody who is not testifying who is a relative who wants to sit on the courtroom, we . . . should be able to accommodate them . . . .

---

[3] The parties agreed to sever the fifth count because it involved a different alleged victim.

On July 19, 2021, the judge heard oral argument on the State's motion in limine to admit A.U.'s testimony as to her "prior disclosure of the sexual assault to her family, specifically her father[;] . . . the verbal and physical abuse by the family; and coercion [of her] to lie by her father" in another family court matter. The judge determined "A.U's testimony regarding her reporting of the assault to her father [wa]s admissible," however "the testimony as it relate[d] to verbal and physical abuse, as well as coercion to lie" would not be permitted.

The trial began on July 20, 2021. In the State's opening statement, it asserted A.U. was "going to tell you that [sexual assault] happened again and again until, finally she could[ no]t take it anymore. She felt trapped. She felt trapped in this house of horrors caused by the sexual gratification of th[e] defendant." He added "the evidence will show it happened month after month after month, year after year."

In defense counsel's opening statement, he stated A.U.:

> will testify what a horrible place this was where she was living. How did she end up there? How did she end up in this house of horrors? She was brought here by [defendant's parents] to improve her life. They brought her to the United States. Her father, her biological father brought her to the United States to get a better education than she was getting in [her native country]. Does this sound like someone that brought his daughter here to abuse her?

A-2064-21

Following opening statements, the trial judge held a side bar conference, during which the State requested the judge reconsider her July 19, 2021 order barring A.U.'s testimony regarding verbal and physical abuse. The State sought reconsideration because defendant referenced the household conditions in his opening statement. The judge found defendant "opened the door somewhat by discussing the home's conditions and telling the jury that the household was not in fact a house of horrors." The judge stated she would "allow some amount of discussion as to the household conditions into the trial." Both attorneys "indicated that they were fine with and accepted the ruling."

A.U. testified during the trial, acknowledging she was born in South America in 2000 and came to the United States when she was eight years old to live in her father's and his wife's home. Also residing in the home were her father's and stepmother's two sons, including defendant. She described her home life as miserable, and that she was often mistreated by defendant and her stepmother.

A.U. testified that during one late afternoon when she was fifteen years old, she arrived home and was going to her room to sleep, unaware defendant was hiding her closet. She described that defendant came out of the closet, pushed her against the bed, got on top of her, pulled his pants down and put a

pillow on top of her face. She testified defendant also pulled down her shorts and put his penis into her vagina. After he left her room, A.U. went to the bathroom and saw blood coming from her vagina. She did not recall further details about the assault.

A.U. testified defendant sexually assaulted her ten more times. She did not remember the details of each attack, but noted the offenses occurred more often when she was sixteen years old. She recalled an event in the living room when defendant "ejaculated on [her] butt . . . [and] cleaned it with his own hand."

Additionally, A.U. remembered the last assault occurred in November 2017, when she was babysitting her baby nephew. She explained defendant took the baby from her and brought the baby upstairs before dragging her upstairs, by her hair, into a room and penetrating her vagina with his penis.

A.U. also testified she went to her friend's house and told the friend about defendant's assaults. A.U. then spoke to the police and threatened to commit suicide but purportedly received no help from the police. Ultimately, A.U. spoke with authorities at school and reported she was planning to commit suicide and would not return to her father's home. Thereafter, A.U. was removed from her father's home.

6

After consulting with counsel, the judge prepared a limiting jury instruction regarding A.U.'s testimony about defendant's prior assaults. The judge read the instruction into the record and defense counsel stated the instruction was "all right" with him. Therefore, the judge instructed the jury:

> [T]he State has introduced evidence that in 2015, the defendant placed a pillow over A.U.'s face and inserted his penis inside her vagina. Normally, such evidence is not permitted under our Rules of Evidence. Our rules specifically exclude evidence that a defendant has committed other crimes, wrongs or acts when it is offered only to show that he has a disposition or tendency to do wrong and, therefore, must be guilty of the charged offenses.
>
> Before you can give any weight to this evidence, you must be satisfied that the defendant committed the 2015 acts alleged by A.U. If you are not so satisfied, you may not consider it for any purpose.
>
> However, our rules do permit evidence of other crimes, wrongs or acts when the evidence is used for certain specific narrow purposes.
>
> In this case, the testimony is admissible for the purpose of providing you with a more complete view of A.U.'s allegations of abuse against defendant and their relationship prior to the charged conduct. You may also consider the evidence as a potential reason why A.U. did not immediately report the abuse.
>
> Whether the evidence does in fact demonstrate any of these permissible purposes is for you to decide. You may decide that the evidence does not demonstrate some or all of these purposes and is not helpful to you

7

at all. In that case you must disregard the evidence. On the other hand, you may decide that the evidence does demonstrate some or all of the purposes and use it accordingly.

However, you may not use this evidence to decide if the defendant has a tendency to commit crimes or that he is a bad person. That is, you may not decide that just because the defendant has committed other crimes, wrongs or acts, he must be guilty of the present crimes.

I have admitted the evidence only for the purpose of providing you with a more complete view of A.U.'s allegations of abuse against defendant and their relationship prior to the charged conduct.

You may also consider the evidence as a potential reason why A.U. did not immediately report the abuse. You may not consider it for any other purpose and may not find the defendant guilty now simply because the State has offered evidence that he committed other crimes, wrongs or acts.

After the State rested its case,[4] but before the defendant presented his defense, the State learned defendant had a phone conversation with his father from jail. The State asserted defendant violated the sequestration order.

---

[4] The judge dismissed the first count of the indictment under Rule 3:18-1 and State v. Reyes, 50 N.J. 454 (1967). The judge determined there was no evidence of assault between January 7, 2016 and May 10, 2016 as alleged in the first count. The judge recited A.U.'s testimony that A.U. "did not remember whether it happened between the specific dates contained within the first count of the indictment."

On the next day of trial, the trial judge conducted a N.J.R.E. 104 hearing regarding sequestration. At the hearing, defendant's father testified he discussed A.U.'s testimony with defendant over the phone during the trial. He explained he was never "told" or "instructed" to "testify in a certain manner" at trial. According to the father, he was told only before the N.J.R.E. 104 hearing that defendant was not permitted to discuss trial testimony with anyone. The trial resumed, and defendant's father was summoned to testify on behalf of defendant.

During the father's trial testimony, he explained he had a phone conversation with defendant during the trial. Defendant's father admitted defendant told him what happened in court and about A.U.'s testimony. Defendant's father testified his trial testimony was truthful and had not "changed" because of his conversation with defendant. The State also cross-examined defendant's father regarding his phone conversation with defendant about A.U.'s testimony.

During the subsequent charging conference, defense counsel agreed defendant violated the sequestration order by speaking to his father about A.U.'s trial testimony. The State sought a jury instruction regarding the violation and the ability to comment on the violation in its closing argument. After her review of the transcript of defendant's conversation with his father, the judge found the

9

conversation provided "a blow-by-blow description of" A.U.'s testimony. While defense counsel stated he could not disagree with the court, he argued an instruction was unnecessary. He noted the State could comment on the father's credibility in its closing argument. The judge concluded a jury instruction was necessary because the father "knew exactly" what A.U. testified about. After further discussion, defense counsel offered no objection to the judge's proposed sequestration instruction.[5]

Accordingly, when the trial ended, the judge not only repeated the "prior bad act" limiting instruction, but she also instructed the jury regarding sequestration as follows:

> Prior to the commencement of testimony from any witness, . . . the court issued a witness sequestration order for all the witnesses in this case. The witness sequestration order required, among other things, that witnesses must not learn about what occurred at the trial before their own testimony.
>
> The purpose of a witness sequestration order is to prevent prospective witnesses from hearing what other witnesses testify to at trial. The order seeks to prevent exposure to prior testimony because the less a potential witness hears of another witness's testimony, the more likely the potential witness will testify based solely on his or her own personal knowledge untainted by the testimony of others.

---

[5] Both counsel discussed the violation of the sequestration order in their closing statements.

 A-2064-21

Here, [defendant's father] a witness for the defense, testified on July 22[], 2021, and he acknowledged that he discussed with defendant some of the prior testimony at trial. As judges of the facts, you are to determine the credibility of the witnesses. And in determining whether a witness is worthy of belief and therefore credible, you may take into consideration the fact that [defendant's father] spoke to defendant about some of the prior trial testimony. You must determine whether you believe any, some or all of [defendant's father]'s testimony in light of the factors that I listed for assessing credibility, in addition to [defendant's father]'s acknowledgment that he spoke to defendant about the testimony that already occurred.

If you believe that any witness or party willfully or knowingly testified falsely to any material facts in the case with intent to deceive you, you may give such weight to his or her testimony as you may deem it entitled. You may believe some of it, or you may, in your discretion, disregard all of it.

The jury subsequently found defendant guilty of two counts of sexual assault of A.U. and one count of endangering the welfare of A.U.

B.

On appeal, defendant raises the following arguments:

POINT I.

THE TRIAL COURT ERRED IN ADMITTING IRRELEVANT AND HIGHLY PREJUDICIAL TESTIMONY REGARDING UNCHARGED ACTS.

A. The motion judge erred in admitting evidence.

11

B. The jury instruction was improperly provided, internally inconsistent, and not properly tailored.

C. These Errors Warrant Reversal.

POINT II.

NO VIOLATION OF A SEQUESTRATION ORDER OCCURRED RENDERING THE JURY INSTRUCTION IMPROPER.

POINT III.

PROSECUTORIAL MISCONDUCT DENIED [DEFENDANT] A FAIR TRIAL.

POINT IV.

CUMULATIVE ERRORS WARRANT REVERSAL.

More specifically, under Point I, defendant argues the trial court committed multiple errors by admitting A.U.'s testimony regarding defendant's "prior bad act." He contends the errors occurred because: (1) the Cofield[6] prongs were improperly analyzed; (2) no N.J.R.E. 104 hearing was held to test whether A.U.'s testimony established the "prior bad act" by "clear and convincing evidence"; (3) the jury instruction was incomplete, "confusing and contradictory," and disguised to allow the jury to consider impermissible res

---

[6] State v. Cofield, 127 N.J. 328, 336 (1992).

A-2064-21

gestae evidence; (4) the jury was not re-instructed on the "prior bad act" evidence when it requested to re-hear A.U.'s testimony; and (5) the "prior bad act" evidence was not sanitized.

In Point II, defendant argues there never was a sequestration order or alternatively, his ignorance of the order belies the notion he knowingly violated it. Moreover, he contends the State never attempted to prove: an order was imposed; he knew of the order's obligations; and he knowingly violated the order. Defendant also argues the jury charge, allowing the jury to "take into consideration" his conversation with his father "about some of the prior trial testimony," and weigh it in their consideration of his father's testimony, violated his right to a fair trial.

In Point III, defendant alleges the assistant prosecutor committed misconduct: (1) in his opening statement by stating the evidence would show defendant's "prior bad act" "happened month after month after month, year after year"; and (2) by questioning A.U. about acts of "physical abuse or verbal abuse," in the home, despite the trial judge's ruling that she would not permit such testimony.

C.

We begin our discussion with a review of the principles governing our

13

analysis. "Trial court decisions concerning the admission of other-crimes evidence [is] afforded 'great deference,' and will be reversed only in light of a 'clear error of judgment.'" State v. Gillispie, 208 N.J. 59, 84 (2011) (citation omitted). "The admissibility of such evidence is left to the sound discretion of the trial court, as that court is in the best position to conduct the balancing required under Cofield due to its 'intimate knowledge of the case.'" Ibid. (citation omitted). "Therefore, a trial court's decision concerning the admission of other-crimes evidence will not be disturbed absent a finding of abuse of discretion." Ibid. (citation omitted). An abuse of discretion occurs when a court's decision "was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (citation omitted).

N.J.R.E. 404(b) provides:

> (1) Prohibited Uses. . . . evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition.
>
> (2) Permitted Uses. This evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or

absence of mistake or accident when such matters are relevant to a material issue in dispute.

"The underlying danger of admitting other-crime evidence is that the jury may convict the defendant because he [or she] is 'a "bad" person in general.'" Cofield, 127 N.J. at 336 (quoting State v. Gibbons, 105 N.J. 67, 77 (1987)). "Whenever the admissibility of uncharged bad act evidence is implicated, a [N.J.R.E.] 404(b) analysis must be undertaken." State v. Rose, 206 N.J. 141, 179 (2011).

"The threshold determination under [N.J.R.E.] 404(b) is whether the evidence relates to 'other crimes,' and thus is subject to continued analysis under [N.J.R.E.] 404(b), or whether it is evidence intrinsic to the charged crime, and thus need only satisfy the evidence rules relating to relevancy, most importantly" N.J.R.E. 403. Rose, 206 N.J. at 180.

"In an effort to reduce the inherent prejudice in the admission of other-crimes evidence, our courts require the trial court to sanitize the evidence when appropriate." State v. Barden, 195 N.J 375, 390 (2011) (citations omitted). "[S]anitizing accommodates the right of the proponent to present relevant evidence and the right of the objecting party to avoid undue prejudice." State v. Collier, 316 N.J. Super. 181, 195 (App. Div. 1998).

"[I]n addition to sanitizing the evidence when appropriate, the court must carefully instruct the jury as to its limited use." Barden, 195 N.J. at 390. "[T]he court's instruction 'should be formulated carefully to explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere.'" Ibid. (alteration in the original) (citation omitted). "The instruction should be given when the evidence is presented and in the final charge to the jury." Ibid.

Sequestration of witnesses is permitted under N.J.R.E 615 which provides "[a]t the request of a party or on the court's own motion, the court may, in accordance with law, enter an order sequestering witnesses." State v. Popovich, 405 N.J. Super. 324, 326-27 (App. Div. 2009) (alteration in the original). "Whether to order sequestration generally rests within the sound discretion of the trial court." Id. at 327 (citing State v. Miller, 299 N.J. Super. 387, 399 (App. Div. 1997)). "It is appropriate to make clear precisely what is being ordered when a sequestration order is entered." State v. Cooper, 307 N.J. Super. 196, 199 n.1 (App. Div. 1997).

"Th[e judge's] discretion, however, must be exercised in light of the underlying policy of sequestering witnesses during a proceeding." Popovich,

16

405 N.J. Super. at 327.  The primary purpose of a sequestration order is to ensure that each prospective witness's testimony is based only upon the witness's own knowledge.  Miller, 299 N.J. Super. at 399.

"In any case when a violation of a sequestration order has" occurred, a trial judge "should promptly conduct a [v]oir dire out of the presence of the jury in order to ascertain the nature and extent of such violation."  State v. Tillman, 122 N.J. Super. 137, 143 (App. Div. 1973).  The judge "should thereupon determine what remedial action is required, if any, in the light of all the circumstances."  Ibid.  "The court may, in its discretion, . . . call the disobedience of the order to the attention of the jury as bearing on the credibility of the witnesses involved."  Id. at 144.

The New Jersey Supreme Court has reminded "trial courts . . . insofar as consistent with and modified to meet the facts adduced at trial, model jury charges should be followed and read in their entirety to the jury."  State v. R.B., 183 N.J. 308, 325 (2005).  "The process by which model jury charges are adopted in this State is comprehensive and thorough; our model jury charges are reviewed and refined by experienced jurists and lawyers."  Ibid.; see also Estate of Kotsovska, ex rel. Kotsovska v. Liebman, 221 N.J. 568, 596 (2015) (there is

a "presumption of propriety that attaches to a trial court's reliance on the model jury charge.").

"The proper standards of review of jury instructions are well-settled: if the party contesting the instruction fails to object to it at trial, the standard on appeal is one of plain error; if the party objects, the review is for harmless error." Willner v. Vertical Realty, Inc., 235 N.J. 65, 80 (2018).

"Without an objection at the time a jury instruction is given, 'there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case.'" Id. at 79 (citations omitted). "Therefore, 'the failure to object to a jury instruction requires review under the plain error standard.'" Ibid. (citation omitted). "Under that standard, '[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result.'" Ibid. (alteration in original) (quoting R. 2:10-2).

When considering a contention of prosecutorial misconduct, we first determine whether misconduct occurred and, if so, whether it deprived the defendant of a fair trial. State v. Wakefield, 190 N.J. 397, 438 (2007); State v. Frost, 158 N.J. 76, 83 (1999). "[A] prosecutor must refrain from improper methods that result in wrongful conviction[s], and is obligated to use legitimate

means to bring about a just conviction." State v. Ingram, 196 N.J. 23, 43 (2008) (quoting State v. Jenewicz, 193 N.J. 440, 471 (2008)). Nevertheless, "[p]rosecutors are afforded considerable leeway in their . . . arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Neal, 361 N.J. Super. 522, 534-35 (App. Div. 2003).

"In determining whether a prosecutor's misconduct was sufficiently egregious [to warrant a new trial], an appellate court 'must take into account the tenor of the trial and the degree of responsiveness of both counsel and the court to improprieties when they occurred.'" Frost, 158 N.J. at 83 (citation omitted). In the absence of objections by defense counsel, a reviewing court will not reverse unless the prosecutor's misconduct "so grievously affect[ed] the substantial rights of the defendant as to convince [the court] that [the misconduct] possessed a clear capacity to bring about an unjust result." State v. Sherman, 230 N.J. Super. 10, 18-19 (App. Div. 1988) (second alteration in the original) (quoting State v. Hipplewith, 33 N.J. 300, 309 (1960)).

D.

Here, in addressing the "prior bad act" evidence, the motion judge conducted an analysis under the N.J.R.E. 404(b)/Cofield framework and under the Rose/Green framework. Under each framework, the judge concluded the

"prior bad act" evidence was admissible. Because we conclude the judge correctly admitted the "prior bad act" evidence under the Rose/Green framework, and, therefore the challenged evidence was admissible, we need not address defendant's remaining argument regarding the judge's N.J.R.E. 404(b)/Cofield analysis.

Under the Rose/Green framework, the judge concluded A.U.'s testimony concerning defendant's "prior bad act" was intrinsic to, not "other" than, the crime charged. Further, the judge found the "prior bad act" was sufficiently contemporaneous to satisfy the second category of evidence under Rose.

After deeming the evidence intrinsic to the crime charged, the judge considered its admissibility under the N.J.R.E. 403 balancing test. In conducting the balancing test, the judge determined the "probative value of the evidence compared with the prejudice to the defendant . . . weigh[ed] in the State's favor."

Notwithstanding the judge's findings, defendant argues A.U.'s testimony about her bleeding following the 2015 sexual assault should have been sanitized. We disagree. First, the judge conducted the N.J.R.E. 403 balancing test for prejudice when she allowed the testimony. Second, defendant fails to demonstrate the reference to the bleeding unduly prejudiced him. Lastly, there

was no objection made to this limited testimony during the trial and defendant has failed to establish this testimony led to an unjust result.

Further, we are persuaded the judge admitted the "prior bad act" evidence for permissible purposes. The judge determined "[t]o deny the testimony of the initial assault[] . . . would woefully deprive the jury of the full story of the assaults and how they unfolded." The judge found "there [was] an unquestionable need" for the evidence to "provide necessary background information."

The judge's findings as to the use of the evidence comport with Rose, "other crimes evidence may be admissible if offered for any non-propensity purpose [including] the need to 'provide necessary background information' about the relationships among the players as a proper purpose." Rose, 206 N.J. at 180-81 (citations omitted) (alteration in original) (emphasis added). In Rose, the Supreme Court noted "there is no need to regard [N.J.R.E.] 404(b) as containing an exhaustive list of the non-propensity purposes permitted of other crime evidence." Id. at 181.

Here, while admitting the evidence for permissible purposes, the judge made clear the evidence could not be used to establish defendant's propensity to commit the charged crime, and after consultation with counsel, she prepared "a

carefully crafted jury instruction" to reflect the limited purpose for which the evidence could be considered by the jury. The jury instruction mirrored the Model Jury Charge (Criminal) "Proof of Other Crimes, Wrongs, or Acts (N.J.R.E. 404(b))" (rev. Sept. 12, 2016) and is presumptively correct. Mindful that defendant did not object to this instruction, we discern no plain error.

We also observe that the judge instructed the jury twice on the "prior bad act" evidence. Her practice comported with the requirements of Barden, 195 N.J. at 390 ("The instruction should be given when the evidence is presented and in the final charge to the jury."). Therefore, we reject defendant's argument the judge was required to re-charge the jury before it re-heard A.U.'s testimony noting defendant never requested this additional charge. In sum, after reviewing the record, we are satisfied there was no abuse of discretion in admitting the "prior bad act" evidence under Rose/Green.

Similarly, we reject defendant's argument that no sequestration order existed, or that because he was unaware of it, he could not have violated the order. Such arguments are belied by the record, considering defense counsel acknowledged that the order was violated.

Further, defendant's contention the jury instruction regarding sequestration resulted in an unfair trial is misguided. Again, there was an

acknowledged violation of the sequestration order. Further, the judge's remedy—the jury instruction—was reasoned and avoided the more drastic remedies of barring defendant's witness's testimony or declaring a mistrial. Moreover, defendant did not object to the jury instruction on sequestration either before or after it was given. Under these circumstances, we discern no plain.

Lastly, we find no merit in defendant's argument of prosecutorial misconduct. First, the prosecutor's mention, in his opening statement, that defendant's bad acts happened "month after month after month, and year after year" "was reasonably related to the scope of the evidence presented." Neal, 361 N.J. Super. at 534-35. Second, the prosecutor's questions of A.U. about acts of "physical abuse or verbal abuse" were permitted by the judge only after defense counsel "opened the door" to such questioning in his opening statement.

To the extent that we have not addressed defendant's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION